1963

The STATE, Respondent v. Robert CAMERON, Appellant.

(428 S.E. (2d) 10)

Court of Appeals

*Asst. Appellate Defender Robert M. Pachak*, of *South Carolina Office of Appellate Defense*, Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Asst. Attys. Gen. Harold M. Coombs, Jr.* and *Norman Mark Rapoport*, Columbia, and *Sol. Joseph P. Mizzell, Jr.*, Orangeburg, *for respondent.*

Submitted Jan. 18, 1993; Decided March 1, 1993.

Reh. Den. April 5, 1993.

CURETON, Judge:

Appellant, Robert Cameron, was convicted of entering a bank with intent to steal and was sentenced to life imprisonment. Because oral argument would not materially assist us in

deciding his appeal, we dispense with oral argument. We reverse and remand.

The sole issue presented in this appeal is whether the trial court erred in refusing to declare a mistrial after it was disclosed that during jury deliberations the bailiff improperly communicated with the forelady of the jury.

At the conclusion of the case, the trial judge properly instructed the jury that if it found Cameron guilty it would have to determine whether or not to recommend mercy. If it did not recommend mercy, Cameron would be sentenced to life imprisonment. If it did recommend mercy, the sentence would be at the discretion of the court.

The jury began deliberations, then returned to the court upon their request that the portion of Cameron's testimony dealing with his prior record be replayed. The jury found Cameron guilty without a recommendation of mercy.

After the verdict, it came to the trail judge's attention that the bailiff had a conversation with the forelady of the jury during their deliberations. The bailiff's account of the conversation was as follows:

> The Forelady knocked on the door, and I knocked back on the door, and she asked me, said that the jury wanted a description about if they went with the sentence of mercy that he wouldn't make it life, and I just told her, "If you want to ask the Judge anything I will hand it to the Judge and I will take a note in for the Judge." And I said it was impossible right at that minute but I would be glad to bring the message back. And I said, "This is a fair Judge, that's all I can answer you. He is a fair Judge. But I will take you back into the courtroom if you want to ask or give me a note and I will take it back to the Judge and ask whatever you want to ask about it."

Thereafter, the court questioned the forelady:

> Q: Yes fine.... I don't want you to go into so much in regard to what the jury was talking about, just about your conversation with her [the bailiff].
>
> A. I just asked abut saying mercy or without mercy and she said that don't worry about it, if you are in a deadlock, you know, if you are in a deadlock about it, don't

worry abut it the Judge is fair. And we, you know, then I asked her if she could take this note to the Judge and get an answer for us because a few people were confused about a certain point. And that's when we decided all we needed to do was rehear the testimony about. . . .

Q: And that's the note that you sent out to me?

A: Right:

Q: All right.

A: And she said, you know, just the Judge was fair, not about the mercy or not mercy.

Q: All right. Didn't go any further than that?

A: No.

On the basis of the above testimony, Cameron moved for a mistrial. The trial judge further examined the forelady:

Q: Let me ask you this though, was it the desire of the [jury], what actually was the questions [sic] that the jury wanted me to answer?

A: They wanted to know the difference of the length in the sentence of, with mercy or without mercy.

Q: Uh-huh.

A: And I told them, we discussed it, and we decided that the length of the sentence shouldn't have any bearing on how we decided.

The trial judge ruled that the jury properly decided that the length of sentence he might impose was not their concern. He further ruled that the short colloquy between the bailiff and the forelady could not have in any way influenced the jury to refuse to recommend mercy.

A defendant in a criminal prosecution is constitutionally guaranteed a fair trial by an impartial jury, and in order to fully safeguard this protection, it is required that the jury render its verdict free from outside influences of whatever kind and nature. *State v. Johnson*, 302 S.C. 243, 250, 395 S.E. (2d) 167, 170 (1990); *State v. Wasson*, 299 S.C. 508, 511, 386 S.E. (2d) 255, 256 (1989); *State v. Salters*, 273 S.C. 501, 504, 257 S.E. (2d) 502, 504 (1979). The mere fact, however, that some conversation occurred between a juror and a court

official would not necessarily prejudice a defendant. *State v. Goodwin,* 250 S.C. 403, 405, 158 S.E. (2d) 195, 197 (1967).

In this case, "[t]here was the private communication of the court official to members of the jury, an occurrence which cannot be tolerated if the sanctity of the jury system is to be maintained. When there has been such a communication, a new trial must be granted unless it clearly appears that the subject matter of the communication was harmless and could not have affected the verdict." *Holmes v. United States,* 284 F. (2d) 716, 718 (4th Cir. 1960); *see Blake v. Spartanburg General Hospital,* — S.C. —, 413 S.E. (2d) 816 (1992).

While the trial court adequately instructed the jury on the verdicts of guilty with and without mercy, the jury was obviously confused as to the length of the respective sentences. In this case, the right to fix punishment or make a recommendation that would place punishment in the discretion of the court rested exclusively with the jury. *State v. Brooks,* 271 S.C. 355, 359, 247 S.E. (2d) 436, 438 (1978); *State v. McGee,* 268 S.C. 618, 620, 235 S.E. (2d) 715, 716 (1977). The bailiff's response to the forelady, that they should not worry if they were deadlocked because the judge was fair, was misleading. It tended to lessen the jury's sense of responsibility by implying that if they rendered a verdict of guilty without mercy, the judge had some discretion in sentencing. "Jurors are simply not to consider the opinions of neighbors, officials or even other juries." *State v. Thomas,* 287 S.C. 411, 413, 339 S.E. (2d) 129, 129 (1986) (quoting *State v. Smart,* 278 S.C. 515, 526, 299 S.E. (2d) 686, 693 (1982), *cert. denied,* 460 U.S. 1088, 103 S.Ct. 1784, 76 L.Ed. (2d) 353 (1983)).

The appellant's conviction is reversed and the case is remanded for a new trial.

Reversed and remanded.

GOOLSBY, J., concurs in separate opinion and LITTLEJOHN, Acting Judge, dissents in separate opinion.

GOOLSBY, Judge (concurring):

I concur in Judge Cureton's opinion but feel some additional explanation is needed.

The forewoman testified that the jury "wanted to know the difference in the length in the sentence, with mercy or without mercy" and, after some discussion, "decided that the length of the sentence shouldn't have any bearing on how we decided."

The length of sentence, however, had everything to do with the case. Two of the three possible verdicts directly involved the jury in sentencing. One verdict required the imposition of a life sentence and another authorized the judge to use his discretion in passing sentence. The jury was not simply to decide the question of guilt without reference to punishment.

Therein lies the problem with what the bailiff said. I think the jury could reasonably have concluded from what the bailiff told the forewoman that the judge, being a fair man, had discretion with regard to the length of sentence, even if it returned a sentence not recommending Cameron to the mercy of the court. Clearly, the jury, judging from what both the bailiff and the forewoman testified to, had forgotten or, at the very least, were confused about the trial judge's instructions regarding the effect of each of the two verdicts of guilty.

LITTLEJOHN, Acting Judge (dissenting):

I respectfully dissent. I do not agree with the majority's opinion that the bailiff's response to the forelady of the jury lessened the jurors' sense of responsibility by implying that if the jury returned a guilty verdict without a recommendation of mercy, the trial judge had some discretion in sentencing the defendant. Rather, I agree with the trial judge's express finding, which he made after questioning the bailiff and the forelady, that nothing that the bailiff said could be construed "to encourage or in any way influence a verdict without mercy." This court should respect that finding, there being evidence to support it. As I read the forelady's testimony, the jurors decided that the length of sentence, whether for life or a lesser term, should not make any difference on how the jury decided the issue of guilt.