611 S.E.2d 283

**The STATE, Respondent,**

v.

**Russell Carl CARLSON, Appellant.**

No. 3948.

Court of Appeals of South Carolina.

Heard Feb. 9, 2005.

Decided Feb. 22, 2005.

Rehearing Denied April 21, 2005.

Gene McCain Connell, Jr., of Surfside Beach, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General David A. Spencer, Office of the Attorney General, all of Columbia; and Solicitor John Gregory Hembree, of Conway, for Respondent.

ANDERSON, J.:

Russell Carl Carlson appeals his convictions for assault and battery with intent to kill and first degree burglary. We affirm.[1]

## FACTUAL/PROCEDURAL BACKGROUND

Junior DeWitt lived with his fiancée, Stephanie Davis, and her two children. One morning, as Davis's daughter was getting ready for school, two men entered DeWitt's home wearing all black and carrying guns. DeWitt was in bed asleep when he was awakened by the sound of the door being kicked open, glass breaking, and gunshots. One of the intruders was a man with several gold teeth who was wearing a bandana. He was carrying guns in both hands and shot DeWitt multiple times as DeWitt stumbled out of bed. The intruders rifled through DeWitt's clothes, took approximately $500, and then left. DeWitt sustained severe injuries. He was in a coma for a month and is now paralyzed; he will never walk again.

DeWitt recognized Carlson as the shooter and identified Demar "Demond" Moore as the other intruder. DeWitt had known Moore for approximately ten years before the incident. He recognized Carlson because Carlson and Moore had come to his house a couple of weeks before the shooting, and the three had engaged in conversation for around fifteen to twenty minutes.

---

1. We note that Carlson's appellate counsel was not his trial counsel.

Moore and Carlson were tried together. The jury convicted Carlson of assault and battery with intent to kill, and burglary in the first degree, and sentenced him to twenty years in prison. Carlson raises eight issues on appeal. Due to the number of issues, and for the sake of clarity, we set forth the remaining facts necessary for our decision in the discussion of the issues to which they pertain. *See Hundley v. Rite Aid of South Carolina, Inc.*, 339 S.C. 285, 293, 529 S.E.2d 45, 49 (Ct.App.2000).

## *LAW/ANALYSIS*

### I. In–Court Identification

■ During the investigation police showed DeWitt a photo lineup. DeWitt picked out Carlson without hesitation. However, the picture of Carlson was approximately four to five times larger than the other photos. The trial judge decided to exclude the lineup, finding it unduly suggestive. Although the prior identification was not admitted, the trial judge did allow DeWitt to identify Carlson in court. The judge found DeWitt could make a reliable in-court identification of Carlson based on factors independent of the improperly suggestive lineup.

■ Carlson first argues the trial court failed to conduct a proper hearing on the admissibility of DeWitt's out-of-court identification pursuant to *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) and *State v. Ramsey*, 345 S.C. 607, 550 S.E.2d 294 (2001). Generally, a trial court must hold an *in camera* hearing when the State offers a witness whose testimony identifies the defendant as the person who committed the crime, and the defendant challenges the in-court identification as being tainted by a previous, illegal identification or confrontation. *Ramsey* at 613, 550 S.E.2d at 297 (citing *State v. Cash*, 257 S.C. 249, 185 S.E.2d 525 (1971)); *State v. Cheatham*, 349 S.C. 101, 561 S.E.2d 618 (Ct.App.2002). The purpose of the *in camera* hearing is to determine whether the in-court identification was of independent origin or was the tainted product of the circumstances surrounding the prior, out-of-court identification. *See Ramsey* at 613, 550 S.E.2d at 297.

Defense counsel did not object to the procedure used in the present case. During pretrial motions, the trial judge suggested that the court merely view the pictures rather than require testimony. Counsel for Carlson responded: "No objection, Your Honor."

 "An issue may not be raised for the first time on appeal, but must have been raised to the trial judge to be preserved for appellate review." *State v. Nichols*, 325 S.C. 111, 120–21, 481 S.E.2d 118, 123 (1997) (citation omitted); *accord State v. Fleming*, 254 S.C. 415, 175 S.E.2d 624 (1970); *State v. Adams*, 354 S.C. 361, 580 S.E.2d 785 (Ct.App.2003), *cert. denied*. A party cannot complain of an error which his own conduct has induced. *State v. Stroman*, 281 S.C. 508, 513, 316 S.E.2d 395, 399 (1984). "Where an objection and the ground therefore is not stated in the record, there is no basis for appellate review." *State v. Morris*, 307 S.C. 480, 485, 415 S.E.2d 819, 823 (Ct.App.1991). A contemporaneous objection is required to preserve issues for direct appellate review. *State v. King*, 334 S.C. 504, 514 S.E.2d 578 (1999); *State v. Thomason*, 355 S.C. 278, 584 S.E.2d 143 (Ct.App.2003); *State v. Greene*, 330 S.C. 551, 499 S.E.2d 817 (Ct.App.1997). *Cf. State v. McCrary*, 242 S.C. 506, 131 S.E.2d 687 (1963) (opining the court was without authority to consider question on appeal where defendant consented to being tried on two indictments at same time and raised no objection to such mode of trial in trial court).

Not only did Carlson fail to object, but he consented to the procedure proposed by the trial judge. Consequently, Carlson failed to preserve this issue.

 At oral argument, Carlson's appellate counsel contended that the right to a hearing was a constitutional due process issue and could not be waived. We disagree. A plethora of cases from the appellate entities of this state recognize that constitutional rights may be waived. For example, in *Burnett v. State*, 352 S.C. 589, 591, 576 S.E.2d 144, 145 (2003), our supreme court observed that "[e]ntering a guilty plea results in a waiver of several constitutional rights. . . ." In *State v. Varvil*, 338 S.C. 335, 526 S.E.2d 248 (Ct.App.2000), this Court held that the appellant waived his First Amendment right to free speech by failing to preserve the issue for review. We

noted that constitutional arguments are no exception to the error preservation rule, "and if not raised to the trial court are deemed waived on appeal." *Id.* at 339, 526 S.E.2d at 250. *See also State v. Downs,* 361 S.C. 141, 604 S.E.2d 377 (2004) (acknowledging a defendant may waive the right to a trial by jury on both guilt and sentencing); *State v. Owens,* 346 S.C. 637, 552 S.E.2d 745 (2001) (providing the Fifth Amendment privilege against self-incrimination may be waived); *Brown v. State,* 340 S.C. 590, 533 S.E.2d 308 (2000) (same); *State v. Shuler,* 344 S.C. 604, 545 S.E.2d 805 (2001) (recognizing the Sixth Amendment right to confrontation may be waived); *State v. Thompson,* 355 S.C. 255, 584 S.E.2d 131 (Ct.App.2003) (explaining the waiver of the Sixth Amendment right to counsel and comparing waiver by affirmative, verbal request with waiver by conduct).

In the case *sub judice,* consent was given and constituted waiver of any procedural due process rights.

## II. Use of Photograph at Trial

■ Carlson asserts the trial court erred in allowing a photograph of Carlson to be admitted into evidence. We disagree.

The trial judge did not allow the State to use DeWitt's identification of Carlson from the photographic lineup because the judge found the disproportionality of Carlson's picture vis-à-vis the other photos rendered the lineup inappropriately suggestive. Carlson argues "it was error to allow the same photograph or a similar photograph into evidence when the court had held the photographs inadmissible as being too suggestive from the photo lineup shown to the victim." He explains: "It seems logical that the court should not allow the admission of a photo into evidence after the court has found that the same photo was too suggestive to be used as part of the photo lineup."

Initially, we note there are two photographs of Carlson in the record. The first picture was taken within a month following the shooting. This photo depicts Carlson with his mouth closed and is not marked as an exhibit. The second photograph was taken approximately a year after the shooting, while Carlson was in jail. In the second picture, Carlson

has his mouth open, his gold teeth prominently displayed. This picture is marked "State's Exhibit 29."

We find the record clearly establishes that the second photograph—which was not utilized in the pretrial lineup—is the photo that was entered into evidence and shown to the jury. In arguing Carlson's motion to suppress the pretrial photo lineup as unduly suggestive, the State mentioned that DeWitt could make an independently reliable in-court identification of Carlson because DeWitt observed the shooter had gold teeth, and in the picture used in the lineup, Carlson's mouth was closed, so his teeth were not visible.

Additionally, counsel for Carlson objected to the admission of State's Exhibit 29 on the ground that it might not be an accurate depiction of Carlson at the time the shooting occurred, because it was taken about a year after the attack. The picture taken a year after the crime cannot be the same photograph utilized in the lineup viewed approximately one month after the attack. Thus, by counsel's own admission, the photo entered into evidence was not the photograph employed in the pretrial lineup.

Further, the preservation of this issue is dubious. A defendant must object to an in-court identification to properly preserve the issue for appeal. *See State v. Wakefield,* 323 S.C. 189, 196, 473 S.E.2d 831, 835 (Ct.App.1996) ("Wakefield was required to object to the in-court identification at trial to properly preserve this issue for appeal."). Arguments not raised to or ruled upon by the trial court are not preserved for appellate review. *State v. Wise,* 359 S.C. 14, 596 S.E.2d 475 (2004), *cert. denied; State v. Perez,* 334 S.C. 563, 514 S.E.2d 754 (1999). "A defendant may not argue one ground below and another on appeal." *State v. Adams,* 354 S.C. 361, 380, 580 S.E.2d 785, 795 (Ct.App.2003), *cert. denied; see also State v. Dunbar,* 356 S.C. 138, 587 S.E.2d 691 (2003) ("A party may not argue one ground at trial and an alternate ground on appeal."); *accord State v. Prioleau,* 345 S.C. 404, 548 S.E.2d 213 (2001). Carlson noted he "would certainly vehemently oppose the introduction of the evidence," and cited the justification that the photograph was "taken ... a year after he was in jail," and therefore did not "represent his appearance at the time of the crime." Now, on appeal, Carlson contends the

photograph was unduly suggestive and violates *Biggers* and *Ramsey*. This constitutional argument was not the basis of the objection at trial.

Nevertheless, we do not find *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), or *State v. Ramsey,* 345 S.C. 607, 550 S.E.2d 294 (2001), controlling. *Biggers* addressed whether a showup identification was so suggestive that it violated the defendant's right to due process. The victim in *Biggers* viewed several suspects in both lineups and showups, and was shown thirty or forty photographs, but was unable to identify her attacker. The police called her in to view a suspect who was being detained on another charge. Officers attempted to construct a lineup, but were unable to find anyone at the city jail or city juvenile home matching the defendant's description. Thus, they conducted a showup instead, and the victim identified the defendant as the perpetrator. Under the totality of the circumstances, the identification was reliable even though the confrontation procedure was suggestive. *Biggers* at 199–201, 93 S.Ct. 375. The Supreme Court found "no substantial likelihood of misidentification." *Id.* at 201, 93 S.Ct. 375.

In *State v. Ramsey,* a distinctive sweater was found near a murdered body. Several witnesses testified to seeing the defendant wearing the sweater on the day of the murder. Two of the witnesses were police officers who had seen an individual wearing the sweater outside the county courthouse several days before the homicide. The officers identified the defendant from a photo lineup. On appeal, the defendant argued the trial judge erred by refusing to hold an *in camera* hearing to challenge the identification procedure. The court noted that the defendant in *Ramsey* cited cases "involving situations where an in-court identification [was] the product of an unlawful confrontation or lineup." 345 S.C. at 613, 550 S.E.2d at 297. The court held those cases were "immaterial because the issue in this case is simply whether an out-of-court photographic lineup was impermissibly suggestive, not whether the subsequent in-court identification was tainted." *Id.* In the case *sub judice,* the trial judge found the out-of-court photographic lineup was impermissibly suggestive; therefore, he did not allow evidence of the pretrial identification. *Ramsey* is inapposite to the facts in this case.

Further, we disagree with Carlson that "[i]t seems logical that the court should not allow the admission of a photo into evidence after the court has found that the same photo was too suggestive to be used as part of the photo lineup." First, Carlson's assertion is factually erroneous because the photograph admitted into evidence was not the same picture used in the lineup. Second, the trial judge found the photo lineup procedure suggestive because Carlson's picture was four or five times larger than the other photos; in other words, the procedure's suggestiveness emanated from the discrepancy between the sizes of the pictures—not Carlson's picture itself. It does not follow that because a picture stands out from a group it is thereby unduly suggestive in isolation. We reject Carlson's argument that the picture should not have been entered into evidence. The admission of State's Exhibit 29 in no way introduced evidence of the suggestive pretrial identification. The picture is relevant because it prominently shows Carlson's gold teeth, a distinctive feature that was significant in DeWitt's description of his assailant.

 Finally, we find the in-court identification was proper. Criminal defendants are constitutionally protected from identification procedures that are so unnecessarily suggestive and conducive to irreparable mistaken identification as to deprive them of due process of law. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Stovall v. Denno*, 388 U.S. 293, 301–02, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), *overruled on other grounds by Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). The determination is to be made based on the totality of the circumstances. *Stovall* at 301–02, 87 S.Ct. 1967; *see also State v. Patterson*, 337 S.C. 215, 229, 522 S.E.2d 845, 852 (Ct.App.1999) ("The query posited is whether under the totality of the circumstances the identification was reliable even though the confrontation procedure may have been suggestive.") (internal quotation marks and citation omitted).

 Because the trial judge in the instant case did not allow the out-of-court photographic lineup into evidence, the issue here is DeWitt's in-court identification of Carlson. A conviction based on a suggestive pretrial photographic lineup and a subsequent in-court identification will be set aside only

if "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *accord State v. Moore,* 343 S.C. 282, 286, 540 S.E.2d 445, 447 (2000) ("An in-court identification of an accused is inadmissible if a suggestive out-of-court identification procedure created a very substantial likelihood of irreparable misidentification."); *State v. Tisdale,* 338 S.C. 607, 611, 527 S.E.2d 389, 392 (Ct.App. 2000). The in-court identification is admissible if based on information independent of the out-of-court procedure. *State v. Rogers,* 263 S.C. 373, 210 S.E.2d 604 (1974). The State bears the burden of proving that the identification was based on an independent source by clear and convincing evidence. *Id.* at 377, 210 S.E.2d at 606.

The record contains ample evidence supporting the reliability and independence of DeWitt's identification of Carlson. DeWitt talked to Moore and Carlson for fifteen to twenty minutes about two weeks before the shooting took place. During that time, Carlson was standing approximately a foot away from DeWitt, directly in front of him. When the shooting occurred, DeWitt was two to three feet from Carlson. The light in the room was shining brightly. DeWitt recognized Carlson because he could see through the sheer bandana Carlson was wearing. DeWitt recalled seeing Carlson's gold teeth, "the same teeth I seen him that same day when he came with Demond Moore to the house." DeWitt testified that he had a clear view of Carlson throughout the shooting.

When DeWitt awoke from the coma approximately one month later, he was presented with the photo lineup. DeWitt picked out Carlson without hesitation, saying that he was one hundred percent certain of Carlson's identity. At trial, DeWitt again asserted with certitude that Carlson was the attacker.

Thus, DeWitt had an opportunity to view Carlson closely both before and during the time the shooting occurred, with an elevated degree of attention. He demonstrated a high level of certainty as to the accuracy of the identification, and the identification was made as soon as possible after the

incident occurred. There was no likelihood of misidentification.

Therefore, use of the State's Exhibit 29 at trial was not improper. The photograph from the lineup was never admitted into evidence, and Carlson did not make a specific objection. The identification was sufficiently reliable to make the probability of misidentification insubstantial.

### III. Replay of Testimony During Jury Deliberations

 Carlson next challenges the trial judge's decision not to require the jury to review DeWitt's entire testimony. We affirm.

During deliberations, the jury requested to rehear DeWitt's testimony. The trial judge granted the request. The poor sound quality, however, required the court reporter to read the solicitor's questions before replaying the answers. When dinner arrived, the trial judge recessed the reading and stated: "We'll come back and conclude this at that time after you finish, all right?" The jury sent an oral message to the court through the bailiff that it would consider whether to hear the remainder of the testimony after the break. The jury never requested to hear the remaining testimony.

After the verdict was returned, counsel for Moore moved for a new trial, arguing that only a portion of the direct examination of DeWitt had been replayed, and none of the cross-examination. Counsel for Carlson joined the motion. The trial judge denied the motion, noting that the playback had been "a laborious and cumbersome procedure," and finding the decision not to continue it was within the jury's discretion.

 "The trial judge, in his discretion, may permit the jury at their request to review, in the defendant's presence, testimony after the beginning of deliberations." *State v. Plyler*, 275 S.C. 291, 298, 270 S.E.2d 126, 129 (1980). The extent of the review is within the trial judge's discretion, which is to be exercised in the light of the jury's request. *Id.*

The facts of the case *sub judice* are similar to those in *Plyler*, where the jury requested the testimony of a key witness be read back to them. There, "[t]he tape was replayed, and upon the conclusion of the direct testimony, the

foreman informed the court that the jury had heard all they desired. The tape was stopped and the jury returned to their deliberations." *Id.* at 298, 270 S.E.2d at 129. The defendant's motion that the jury be required to hear the cross-examination was denied by the trial judge. Our supreme court affirmed, holding: "The court is not required to submit evidence to the jury for review beyond that specifically requested but may, in its discretion, have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested." *Id.*

Similarly, in *State v. Summers,* 276 S.C. 11, 274 S.E.2d 427 (1981), *overruled on other grounds by State v. McFadden,* 342 S.C. 629, 539 S.E.2d 387 (2000), the jury requested to hear both the direct and cross-examinations of the victim and a doctor. Apparently, only the direct examinations were played. When the jury returned to its deliberations, defense counsel objected to the court " 'not allowing the jury to listen to the cross-examination of the prosecuting witness in the same area of testimony that the jury listened to of the direct examination.' " *Id.* at 16, 274 S.E.2d at 430. The court, citing *Plyler,* emphasized "the broad discretion vested in the trial judge in dealing with requests of the jury to review evidence during their deliberations." *Id.* The court explicated: "While the record fails to show what testimony was reproduced for the jury, it is reasonably inferable that the jury was satisfied with the court's response to their requests and indicated no further need for a review of the testimony." *Id.* In view of the appellant's failure to "clearly show a failure of the court to comply with the request of the jury and the inference that the jury apparently felt their request had been met," the court found "no abuse of discretion." *Id. See also State v. Lincoln,* 213 S.C. 553, 50 S.E.2d 687 (1948), *overruled on other grounds by State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991). The rule in federal courts is similar. *U.S. v. Holmes,* 863 F.2d 4, 5 (2nd Cir.1988).

We find no abuse of discretion in the trial judge's actions. The law imposes no duty on the judge to require the jury to hear additional testimony. *Plyler,* 275 S.C. at 298, 270 S.E.2d at 129.

Additionally, the preservation of this issue is questionable since no objection was made until after the verdict was returned. In order to preserve this issue, Carlson must have made a request at trial to have the remainder of the testimony replayed. *State v. Hartley*, 307 S.C. 239, 414 S.E.2d 182 (Ct.App.1992). Carlson made such a request, but it was not contemporaneous. In *Hartley*, the jury "asked to hear replayed only the solicitor's cross-examination of Hartley." *Id.* at 243, 414 S.E.2d at 185. This Court held that "[w]e need not address Hartley's complaint concerning the failure of the trial judge to require the jury ... to listen to other portions of [Hartley's] testimony...." *Id.* at 244, 414 S.E.2d at 185. We expounded: "Hartley never asked the trial judge to have the 'other portions' of Hartley's testimony ... played back to the jury. Moreover, he never objected at trial to the playback of only Hartley's cross-examination by the solicitor." *Id.* We concluded that, even if we were to reach the issue, "we would hold the trial judge committed no abuse of discretion." *Id.* (citing *Plyler*, 275 S.C. at 298, 270 S.E.2d at 129). *See also State v. Curtis*, 356 S.C. 622, 633, 591 S.E.2d 600, 605 (2004) (holding that an objection made after several pages of testimony came too late to preserve the issue); *State v. King*, 334 S.C. 504, 510, 514 S.E.2d 578, 581 (1999) (concluding that appellant waived review by failing to object before the jury verdict); *State v. Hoffman*, 312 S.C. 386, 393, 440 S.E.2d 869, 873 (1994) (holding that a contemporaneous objection is required to preserve an issue for appellate review).

### IV. Interaction Between Jury and Bailiff

 Carlson contends he should be granted a new trial because the bailiff allegedly engaged in an improper discussion with the jury during deliberations. The record indicates that during the dinner break the jury sent an oral message to the court through the bailiff that it would consider whether it wished to hear the remainder of the testimony. Defense counsel moved for a new trial, and the trial judge denied the motion, explaining:

As to the hearing the entire testimony of the witness, Mr. DeWitt, I will say this to you and you may not be aware of it, it would have occurred off the record, but when dinner concluded last night the foreperson of the jury informed the

bailiff who was removing the trash and other cups and things of that nature from the room that the jury was going to first consider whether they wished to hear any further testimony, and we never heard back from the jury again. The implication to the Court, of course, being that they didn't care to hear any more testimony. That was a laborious and cumbersome procedure, most difficult for our court reporter and one that was difficult for those listening, and I certainly can understand why the jury would not have wanted to continue listening to the testimony. I find no error in that, sir. In fact, I find that to have been within the discretion of the jury and they exercised their discretion and that's appropriate.

Carlson argues this to be a violation of the sanctity of the jury system, entitling him to a new trial. Carlson relies on *State v. Cameron*, 311 S.C. 204, 428 S.E.2d 10 (Ct.App.1993), wherein the court remarked: "there was the private communication of the court official to members of the jury, an occurrence which cannot be tolerated if the sanctity of the jury system is to be maintained." *Id.* at 208, 428 S.E.2d at 12. In *Cameron*, the defendant was accused of entering a bank with intent to steal. The trial judge charged the jury that if it found the defendant guilty it would have to decide whether or not to recommend mercy. If the jury decided not to recommend mercy, the defendant would be given a life sentence. The jury returned a verdict of guilty without a recommendation of mercy. However, after the verdict, the trial judge discovered that the bailiff had a discussion with the forelady of the jury during deliberations. When the forelady informed the bailiff that the jury "wanted a description about if they went with the sentence of mercy that he wouldn't make it life," the bailiff responded, ". . . don't worry about it the Judge is fair." *Id.* at 206–07, 428 S.E.2d at 11.

The trial judge refused to declare a mistrial, but a divided court of appeals reversed. We held that when a court official engaged in private communication with the jury, " 'a new trial must be granted unless it clearly appears that the subject matter of the communication was harmless and could not have affected the verdict.' " *Id.* at 207–08, 428 S.E.2d at 12 (quoting *Holmes v. United States*, 284 F.2d 716, 718 (4th Cir.1960)). Yet, we observed, "The mere fact . . . that some conversation occurred between a juror and the court official would not

necessarily prejudice a defendant." *Cameron* at 207–08, 428 S.E.2d at 12.

In this case, there was no communication by the bailiff to the jury. The bailiff simply relayed the message without responding. Nor was there any indication of improper outside influences. *Cameron* deals only with "private communications of the court official to members of the jury" and is thus inapplicable. *Id.*

Our supreme court has outlined the proper procedure for this situation:

> If, during deliberation, the jury finds need to review portions of the testimony or to consult the court regarding questions of law, the foreman should inform the bailiff that the jury wishes to consult with the judge. The subject matter of the jury's inquiry should not be discussed at all. The bailiff's single responsibility is to advise the court of the foreman's request. The matter is then completely in the hands of the trial judge.

*Jacobs v. Am. Mut. Fire Ins. Co. of Charleston,* 287 S.C. 541, 543, 340 S.E.2d 142, 143 (1986).

We find no error here. The bailiff did exactly what he should have done—he advised the trial judge of the jury's communication without commenting on the subject matter of the case. Furthermore, defense counsel made no objection on this ground at trial. Nor was any request made to have the bailiff or jurors examined to determine if any prejudicial exchange occurred.

## V. Closing Remarks

Carlson's next ground for appeal deals with the following remarks made by the prosecutor during closing arguments:

> Now, the Defense made a big deal about, you know, "Don't get carried away with the brutality of it. We're not saying it's not brutal. We're so sorry this happened," which I'll submit to you I didn't—these Defendants have the right not to testify, and they can, you know, we have the burden of proof and they've got a constitutional right not to testify but they can't come in and apologize.

Counsel for Moore immediately objected. The trial judge sustained the objection and gave a curative instruction:

"There's no inference to be taken. The Defendants have a right to remain silent and have a right not to testify." The judge charged the jury that defendants have a constitutional right not to testify, and that their failure to testify could not be used against them, even to the slightest degree. Defense counsel did not make any further motions.

Once again, this issue has not been preserved for review. "Failure to object to comments made during argument precludes appellate review of the issue." *State v. Varvil,* 338 S.C. 335, 339, 526 S.E.2d 248, 251 (Ct.App.2000). In the instant case, counsel for Moore objected, but Carlson did not. In *State v. Carriker,* 269 S.C. 553, 238 S.E.2d 678 (1977), the court held appellant's assertion of error was not preserved because "appellant's counsel made no objection ... at trial. While appellant's co-defendant did object, the appellant may not utilize the objection of another defendant to gain review." *Id.* at 555, 238 S.E.2d at 678; *see also State v. Brannon,* 347 S.C. 85, 89, 552 S.E.2d 773, 775 (Ct.App.2001) (finding failure to suppress evidence not preserved where appellant did not join in co-defendant's motion to suppress); *State v. Nichols,* 325 S.C. 111, 123, 481 S.E.2d 118, 124 (1997) ("Finally, the remaining issues raised by appellant are not preserved for review since appellant failed to object during trial or join in his co-defendant's objections."). Because Carlson did not raise an objection to the solicitor's comments and did not join in his co-defendant's objection, this issue is not preserved.

Additionally, neither party moved to strike or requested a curative instruction. *See State v. Patterson,* 324 S.C. 5, 18, 482 S.E.2d 760, 766 (1997) (holding that where an appellant objects to improper comments in closing arguments and the objection is sustained, the issue is not preserved unless the appellant further moves to strike or requests a curative instruction); *State v. Primus,* 341 S.C. 592, 604, 535 S.E.2d 152, 158 (Ct.App.2000), (providing a thorough discussion and concluding "the cases are legion in holding that *if an appellant objects and the objection is sustained* but he does not move for a curative instruction or request a mistrial he has received what he asked for and cannot be heard to complain on appeal."), *rev'd in part on other grounds,* 349 S.C. 576, 564 S.E.2d 103 (2002); *State v. McFadden,* 318 S.C. 404, 410, 458 S.E.2d 61, 65 (Ct.App.1995) (noting that appellant must move to strike to preserve issue for appeal).

 Even if the issue were properly preserved, there would be no reversible error. Improper closing argument does not automatically require reversal of a conviction. *State v. Huggins*, 325 S.C. 103, 481 S.E.2d 114 (1997); *State v. Copeland*, 321 S.C. 318, 468 S.E.2d 620 (1996). "It is impermissible for the prosecution to comment, directly or indirectly, upon the defendant's failure to testify at trial." *State v. Cooper*, 334 S.C. 540, 544, 514 S.E.2d 584, 591 (1999). "However, improper comments on a defendant's failure to testify do not automatically require reversal if they are not prejudicial to the defendant." *Id.* The appropriateness of a solicitor's closing argument and the decision whether to grant a defendant's motion for a mistrial are matters within the trial judge's discretion that ordinarily will not be disturbed on appeal. *State v. Sweet*, 342 S.C. 342, 347, 536 S.E.2d 91, 93 (Ct.App. 2000).

 Negative inferences created by prosecutors can be cured if the trial judge gives an immediate curative instruction to the jury. *Cooper*, 334 S.C. at 554, 514 S.E.2d at 591. If the trial judge charges the jury during jury instructions that the burden of proof is fully on the State, and that the jury may not consider a defendant's failure to testify in its deliberations, any prejudicial effect can be cured. *Id.* The appellant has the burden of proving he did not receive a fair trial because of the improper argument. *State v. Linder*, 276 S.C. 304, 278 S.E.2d 335 (1981). Because the trial judge gave an immediate curative instruction upon objection of defense counsel, and charged the jury that failure to testify could not be used against either defendant, any prejudicial effect was cured.

## VI. *Brady* Claim

 Carlson contends the prosecution violated his rights under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to provide a forty-page transcript to defense counsel prior to trial. During cross-examination of Carlson's alibi witness, Heather Wilson, the prosecution used a transcribed conversation between Wilson and an investigator to impeach her. Counsel for Moore objected on the ground that he had not been provided a copy. The trial judge required the State to provide the transcript to the defense. Counsel for Moore further objected that he had not had time to review the document. The trial judge allowed cross-exami-

nation to continue, but announced that he would permit defense counsel to recall the witness after a recess. Moore and Carlson both opted to reserve the right to recall Wilson for redirect; however, neither defendant recalled her.

Wilson averred Carlson was in bed with her on the morning DeWitt was attacked. She claimed that Carlson had gotten up that morning to get her son to school on time, and, therefore, could not have been at the site of the shooting. The State then called the principal of the school Wilson's son attended. The principal testified that Wilson's son had been tardy the morning of the attack and had not checked into the office when he arrived.

 Carlson's argument is not preserved. We reiterate, Carlson cannot use an objection by his co-defendant to preserve an issue for appellate review. *State v. Carriker*, 269 S.C. 553, 555, 238 S.E.2d 678, 678 (1977). Additionally, Carlson did not enter a copy of the statement into the record, so review is not possible. In *State v. Mitchell*, 330 S.C. 189, 498 S.E.2d 642, (1998), the appellant argued the trial judge improperly refused to consider a written statement, allegedly made by one of the State's eyewitnesses, which was discovered after the jury began deliberating. The court noted that "the statement is not in the record on appeal and therefore this Court does not know exactly what information it contained." *Id.* at 199, 498 S.E.2d at 647; *see also State v. Hutto*, 279 S.C. 131, 303 S.E.2d 90 (1983) (affirming dismissal of indictment for insufficiency of evidence where the State failed to meet its burden of presenting a record which was sufficiently complete to permit review by the appellate entity). The burden is on the appellant to provide a sufficient record for review. *State v. Williams*, 321 S.C. 455, 464 n. 4, 469 S.E.2d 49, 55 n. 4 (1996); *State v. Tyndall*, 336 S.C. 8, 17, 518 S.E.2d 278, 283 (Ct.App.1999).

 Moreover, Carlson has not established a *Brady* violation. Suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *State v. Taylor*, 333 S.C. 159, 508 S.E.2d 870 (1998) (citing *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)); *Gibson v. State*, 334 S.C. 515, 524, 514 S.E.2d 320, 324

(1999). *Brady* only requires disclosure of evidence that is both favorable to the accused and material to guilt or punishment. *Taylor*, 333 S.C. 159, 508 S.E.2d 870 (citing *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).

 A *Brady* claim is based on the requirement of due process. To establish a due process violation, an accused must demonstrate that the evidence was (1) favorable to the accused; (2) in the possession of or known to the prosecution; (3) suppressed by the prosecution; and (4) material to guilt or punishment. *Gibson* at 524, 514 S.E.2d at 324 (citing *Kyles v. Whitley*, 514 U.S. 419, 432–42, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *Brady*, 373 U.S. at 87, 83 S.Ct. 1194; *State v. Von Dohlen*, 322 S.C. 234, 241, 471 S.E.2d 689, 693 (1996)); *State v. Jarrell*, 350 S.C. 90, 107, 564 S.E.2d 362, 372 (Ct.App.2002), *cert. denied.* The rule applies to impeachment evidence as well as exculpatory evidence. *Gibson* at 524, 514 S.E.2d at 324 (citing *Bagley*, 473 U.S. at 676, 105 S.Ct. 3375).

There are three categories of *Brady* violations: (1) cases involving nondisclosed evidence or perjured testimony about which the prosecutor knew or should have known; (2) cases in which the defendant specifically requested the nondisclosed evidence; and (3) cases in which the defendant made no request or only a general request for *Brady* material. *Gibson* at 524–25, 514 S.E.2d at 325 (citing *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)).

 Prior to trial, defense counsel moved to compel copies of any *Brady* material and any statements made during the investigation of the case. In "specific-request" or "general- or no-request" situations such as this one, favorable evidence is considered material for *Brady* purposes. *Gibson* at 525, 514 S.E.2d at 325. Reversible error occurs when the prosecution suppresses material that had a reasonable probability of achieving a different result in the proceeding if it had been disclosed to the defense, thereby undermining confidence in the outcome of the trial. *Id.* Exculpatory evidence is that which creates a reasonable doubt about the defendant's guilt. *State v. Forney*, 321 S.C. 353, 468 S.E.2d 641 (1996); *Jarrell* at 107, 564 S.E.2d at 372. The court must make the materiality determination on a case-by-case basis. *Gibson* at 525, 514 S.E.2d at 325.

We cannot say that nondisclosure of the transcript of Wilson's prior inconsistent statement to the defense undermined confidence in the outcome of the trial. Courts have held that when defense counsel is given the opportunity to review and use the inconsistent statement in cross-examination, as was done here, there is no reasonable probability the outcome of the trial would have been different. *See, e.g., Sheppard v. State,* 357 S.C. 646, 660, 594 S.E.2d 462, 470 (2004). Here, Carlson was given a copy of the statement, and he was afforded the opportunity to recall Wilson, which he did not do. Additionally, Wilson's impeachment did not turn on the transcript, but on the school principal's testimony that Wilson's son had been tardy on the morning of the shooting. Thus, the suppression did not undermine confidence in the outcome of the trial.

## VII. Request for New Trial

Carlson argues the trial judge erred in allowing the prosecution to continue cross-examining Wilson using the forty-page transcript of her prior statement after defense counsel objected. He contends a new trial is warranted. We disagree.

Counsel for Carlson did not make a contemporaneous objection or provide a copy of the statement in the record for appellate review. Carlson has failed to establish a *Brady* violation and thus cannot show entitlement to a new trial. Finally, Carlson did not request a new trial on the basis of *Brady.* Issues not raised and ruled upon by the trial court are not preserved for appellate review. *State v. Dunbar,* 356 S.C. 138, 587 S.E.2d 691 (2003).

## VIII. Use of Prior Criminal Record

Carlson's final argument on appeal is that the trial court erred in informing him that any criminal conviction would be admissible against him if he took the witness stand. This argument fails for several reasons.

Carlson did not testify. The issue, therefore, is not preserved for our review. In *State v. Glenn,* 285 S.C. 384, 330 S.E.2d 285 (1985), the South Carolina Supreme Court observed:

In *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), the United States Supreme Court re-

cently refused to review a claim, under Federal Rule of Evidence 609(a), of improper impeachment with a prior conviction. The Court reasoned that when the defendant does not testify, appellate review is too speculative for several reasons. Those reasons include: the freedom of the trial judge to later alter his ruling; the possibility the prosecution may not have sought to impeach the defendant with the prior convictions; the likelihood that an adverse ruling might not have been the real motivation for the defendant's decision not to testify; and the inability of the appellate court to review any error for harmlessness.

*Glenn* at 385, 330 S.E.2d at 285–86. The *Glenn* court adopted *Luce,* holding: "when the trial judge chooses to make a preliminary ruling on the admissibility of prior convictions to impeach a defendant and the defendant does not testify at trial, the claim of improper impeachment is not preserved for review." *Id.* at 385, 330 S.E.2d at 286; *see also State v. Ford,* 334 S.C. 444, 454, 513 S.E.2d 385, 390 (Ct.App.1999).

Further, the trial judge never ruled on the admissibility of Carlson's prior convictions. Carlson made a motion *in limine* to exclude any mention of Carlson's prior criminal record, which the trial judge took under advisement. After the State rested its case, the trial judge informed both defendants of their right to testify and stated: "if you do testify, if you have some prior record, then that will come into evidence on the basis of your believability and credibility, not on the basis of your guilt or innocence with regard to these charges...." Immediately after the address, the trial judge asked them whether they had any questions about their right to remain silent or their right to testify.

Carlson contends that the judge's statement constituted a ruling on the prior motion *in limine.* However, we find the trial judge was only generally advising the defendants of the possibility they would be impeached. Immediately prior to the colloquy, Carlson's counsel requested that the judge "allow him to defer his decision [whether to testify] until after we present the rest of our case." The judge consented. After Carlson's witness testified, counsel for Carlson asked the court for a moment to discuss with Carlson whether to call another witness or testify. He chose to rest. Carlson never sought clarification on the ruling as to which charges would be admissible. We are not persuaded a final ruling was made.

Carlson did not testify. Therefore, pursuant to *Glenn*, the issue is not preserved for our review.

## CONCLUSION

We hold that Carlson consented to the procedure used for determining the admissibility of the photo lineup. The in-court identification was proper because the suggestive photograph was not used, no specific contemporaneous objection was raised, and there were sufficient indicia of reliability to indicate the in-court identification had an independent basis. We find no abuse of discretion in the judge's decision not to order the jury to review the entire testimony of DeWitt. Additionally, the bailiff's action in relaying the message from the jury to the judge was not improper. Carlson's *Brady* claim is not preserved. Carlson failed to demonstrate a *Brady* violation. Finally, we hold the trial judge's address to the defendants was not a ruling on the admissibility of Carlson's prior criminal record, and, even if it were, the issue is not preserved. Accordingly, Carlson's convictions are hereby

**AFFIRMED.**

BEATTY and SHORT, JJ., concur.