THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 v.
 Clarence Gibbs, Appellant.
 
 
 

Appeal From Georgetown County
 Paula H. Thomas, Circuit Court Judge
Unpublished Opinion No. 2007-UP-333
Submitted June 1, 2007  Filed June 27, 2007
AFFIRMED

 
 
 
 Appellate Defender Kathrine H. Hudgins, South Carolina Commission on Indigent Defense, of Columbia, for Appellant.
 Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Harold M. Coombs, Jr., Office of the Attorney General, of Columbia; and Solicitor John Gregory Hembree,  of Conway, for Respondent.
 
 
 

PER CURIAM: Clarence Gibbs appeals his convictions for kidnapping, armed robbery, and possession of a weapon during the commission of a violent crime.  Gibbs claims the trial court erred in admitting evidence of an out of court show-up identification.  Gibbs also alleges the trial court erred in admitting half of the photo line-up when the other half was lost prior to trial.  Finally, Gibbs avers the court erred in failing to give an alibi charge.  We affirm.
FACTS
On April 10, 2005, at approximately 9:30 p.m., the Piggly Wiggly grocery store on Highmarket Street in Georgetown was robbed.  John Fowlkes, the manager, Eric Sessions, the cashier, and Greg Morton, the bagger, were working when the store was robbed.  All three employees testified that a man entered the store, approached Fowlkes and Sessions, pulled a gun, and told them he was there to rob the store.  The robber then took Fowlkes and Sessions to the office, also taking Morton along the way.  When they arrived at the office, Fowlkes opened the door and let the others inside.  As directed, Fowlkes filled a garbage bag with approximately $500.  Thereafter, the robber left the store.  Store surveillance captured the whole incident on tape.
 
The employees immediately notified the authorities of the robbery, and each gave consistent descriptions of the robber and the incident.  After viewing the surveillance tape, officers with the Georgetown Police Department compiled a photo line-up, consisting of two pages with six photos on each page.  One page contained a picture of Gibbs, while the other did not.  Though both pages were presented to the victims, the page without Gibbss photo was lost prior to trial.  Ten days after the incident, Fowlkes and Morton both identified Gibbss picture as that of the robber, while Sessions was unable to identify any of the twelve individuals pictured.
 
Approximately one week later, the police brought Gibbs in for questioning.  All three victims were brought to the police station to view Gibbs.  Fowlkes and Morton identified Gibbs as the robber both by his appearance and his voice.  Meanwhile, Sessions, upon viewing Gibbs, was sure Gibbs was not the person who robbed the Piggly Wiggly.
 
Gibbss girlfriend, Karen Dozier, and mother, Rosa Jenkins, each testified they were at home with Gibbs on the night of the robbery.  Gibbs, Dozier, and Jenkins testified they were watching the television show JAG on Sunday, April 10, 2005, between 9:00 p.m. and 10:00 p.m.  They remembered this particular episode of JAG because Gladys Knight had a cameo role and sang her hit song Midnight Train to Georgia. 
 
Both Jenkins and Dozier testified the only channels available at their house were ABC and FOX while Gibbs testified they also picked up channel 5.  The State presented rebuttal witnesses from ABC and FOX who testified their stations did not carry JAG on the night in question.  One of the rebuttal witnesses testified JAG was a CBS affiliated show and would have come on channel 5 in Georgetown. 
 
Prior to trial, Gibbs moved to suppress any evidence of any show-up identifications as well as any mention of the incomplete photo line-up and any identifications that came from the line-up.  The trial judge then held a Neil v. Biggers[1] hearing.  After the hearing, the court made a thorough ruling denying Gibbss motion to suppress both types of identification.  
 
At the conclusion of the trial, the jury convicted Gibbs on all three counts, and the judge sentenced him to concurrent terms of twenty years imprisonment for the armed robbery and for the kidnapping, and five years imprisonment to run consecutively for the possession of a weapon during the commission of a violent crime.  This appeal follows.
LAW/ANALYSIS
Gibbs argues the trial court erred in admitting evidence of an out of court show-up identification.  We disagree.
This issue is not properly preserved for review.  See State v. Simpson, 325 S.C. 37, 479 S.E.2d 57 (1996) (holding a ruling in limine is not final, and unless an objection is made at the time the evidence is offered and a final ruling procured, the issue is not preserved for review); State v. Dunbar, 356 S.C. 138, 587 S.E.2d 691 (2003) (holding issues not preserved for review cannot be addressed on appeal).
The trial of this case was conducted out of order to allow Eric Sessions, one of the victims and a defense witness, to report to the United States Navy.  Thus, Sessions was the first witness to be asked about the show-up identification.  The defense thoroughly questioned Sessions about the show-up identification.  Sessions responded that he was sure Gibbs was not the person who robbed the Piggly Wiggly.
 
Both Fowlkes and Morton were then examined as part of the States case.  During both examinations the witnesses were asked about the show-up identification process.  Both witnesses confirmed that the man at the police station during the show-up was the man who robbed the Piggly Wiggly.  Both witnesses also identified that man as Gibbs, the defendant. 
 
The defense failed to object to the show-up identification during either Fowlkess or Mortons examination.  Therefore, pursuant to Simpson and Dunbar, that issue is not preserved for our review.
Gibbs next argues the trial court erred in admitting half of the photo line-up identification when the other half of the line-up was lost prior to trial.  We disagree.  
 
This issue is not preserved for our review.  State v. Simpson, 325 S.C. 37, 479 S.E.2d 57 (1996) (holding a ruling in limine is not final, and unless an objection is made at the time the evidence is offered and a final ruling procured, the issue is not preserved for review); State v. Carlson, 363 S.C. 586, 611 S.E.2d 283 (Ct. App. 2005) (holding defendant failed to preserve issue for appeal when he responded No objection when the previously objected-to photographs were introduced into evidence at trial); State v. Dunbar, 356 S,C, 138, 587 S.E.2d 691 (2003) (holding issues not preserved for review cannot be addressed on appeal).
Once again, the defense questioned Sessions about the photo line-up prior to the State attempting to admit the line-up into evidence.  The State first moved the photo line-up into evidence during Fowlkess testimony.  When the State made their motion to admit the line-up, the defense responded: No objection.
 
Later, when the State moved to enter the surveillance tape into evidence, the defense responded as follows:

 Subject to our previous objection.  I mean, your Honor, for clarification when the line-up was introduced into evidence previously I think I did not voice an objection.  I would like the record to reflect that the line-up that was introduced was subject to a previous objection.  The court has ruled and admitted that line-up but Id like the record to reflect that that is subject to our previous objection.

Thereafter, the defense made a timely objection when the State attempted to introduce Mortons copy of the photo line-up and when the State attempted to introduce a copy of the line-up during the investigating officers testimony.  Both of those objections were overruled and the line-ups were admitted into evidence.
          Gibbss argument regarding the photo line-up being admitted into evidence during Fowlkess testimony is not preserved for our review pursuant to Simpson, Carlson, and Dunbar.  With respect to Gibbss argument that the line-up should not have been admitted during Mortons and the officers testimony, we find even if the line-up was erroneously admitted, it was harmless error as it was merely cumulative to the other line-up, the show-up identifications, and the in court identifications.  See State v. Blackburn, 271 S.C. 324, 329, 247 S.E.2d 334, 337 (1978)(Under settled principles, the admission of improper evidence is harmless where it is merely cumulative to other evidence.).  
 
Gibbss final argument is that the trial court erred in failing to give an alibi charge.  We disagree.
Gibbs admits he did not object to the charge as given.  By not raising a specific objection to the trial courts omission of a jury instruction on the law of alibi, Gibbs waived the right to raise the issue on appeal.  State v. Johnson, 315 S.C. 485, 445 S.E.2d 637 (1994).
Accordingly, the trial courts decision is 
AFFIRMED.[2]  

STILWELL, SHORT, and WILLIAMS, JJ., concur.

[1] 409 U.S. 188 (1972).
[2] We decide this case without oral argument pursuant to Rule 215, SCACR.