485 S.E.2d 367

**William WOLFE, Respondent,**

v.

**STATE of South Carolina, Petitioner.**

**No. 24614.**

Supreme Court of South Carolina.

Submitted Feb. 20, 1997.

Decided May 12, 1997.

160

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Teresa A. Knox, Assistant Attorney General Matthew M. McGuire, Columbia, for Petitioner.

Assistant Appellate Defender Lesley Coggiola, of South Carolina Office of Appellate Defense, Columbia, for Respondent.

TOAL, Justice:

In this action for Post–Conviction Relief ("PCR,"), the PCR court granted relief to William Wolfe based on ineffective

assistance of counsel at Wolfe's guilty plea proceeding. We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

In early 1994, Wolfe was indicted for assault and battery with intent to kill ("ABIK") and possession of a firearm or knife during the commission of a violent crime. The case was called for trial in May 1 994. During the pre-trial motion hearing, the trial judge refused to grant Wolfe a continuance to get a mental evaluation and also indicated, though without ruling conclusively on the matter, that he would exclude as irrelevant certain evidence relating to Wolfe's motive for the shooting.[1]

Before the State began to present its case in chief, Wolfe decided to plead guilty. The evidence presented to the PCR court was conflicting regarding Wolfe's reasons for pleading guilty. Certainly both Wolfe and his trial counsel had felt boxed in by the trial court's pretrial rulings.

Additionally, however, Wolfe testified at the PCR hearing that his trial counsel had represented to him that the judge would give Wolfe a reduced sentence (100 to 15 years) if he would plead guilty. In contrast, Wolfe's trial lawyer testified at the PCR hearing that he had informed Wolfe that although he *hoped* the trial judge would give him a reduced sentence, the judge certainly was not obligated to do so.

The transcript of the guilty plea hearing reflects that the trial judge questioned Wolfe extensively about the plea, asking him, *inter alia*, whether he understood that he could get twenty years for ABIK and five years for possession of a firearm or knife during the commission of a violent crime and whether he had been promised anything for pleading guilty. Wolfe's answers to these questions reflect an awareness of the potential range of sentences and an understanding that he had not been promised anything in return for his guilty plea.

Moreover, at the guilty plea, his lawyer stated to the court:

---

1. Wolfe had shot a man who was the father of the daughter of Wolfe's girlfriend. By all indications, Wolfe firmly believed the man was sexually abusing the daughter, and the defense wished to introduce evidence, including DSS records, regarding the abuse in order to show Wolfe's motive for the shooting.

And just so the record is correct, Your Honor, I did indicate to the defendant here, whether rightly or wrongly, but as counsel, trying to do my job, Your Honor, I did explain to the defendant that it would be my hope that by, as I say, standing up here like a man and admitting to the wrongful act that took place that perhaps that the Court may take that into consideration as some mitigation toward his sentence.

But I told him there is no promise from the Court or anything like that; and there is no negotiations from the State at all.

Immediately following this statement by Wolfe's trial lawyer, the following exchange occurred:

The Court: Mr. Wolfe, you understand the recommendations from the attorneys, or what they have said to you, is not binding on me in any way. I have to hear the facts.

The Defendant: Yes, sir.

Shortly thereafter, the trial judge sentenced Wolfe to the maximum possible sentences—twenty years on the ABIK and five years for possession of a firearm or knife during the commission of a violent crime.

Wolfe abandoned his direct appeal. In his application for PCR, he alleged his trial counsel had been ineffective in failing to request a continuance prior to the day of trial, in failing to develop certain defenses, and in failing to adequately explain to him the plea procedure and potential sentence. The PCR, court granted Wolfe's application.

This Court then granted the State's petition for writ of certiorari.

## LAW/ANALYSIS

### A. INEFFECTIVE ASSISTANCE IN DEVELOPMENT OF DEFENSES

■ The State first argues the PCR, court erred in finding Wolfe's trial counsel was ineffective in failing to request a continuance prior to the day of trial and in failing to develop certain defenses.[2] We agree.

---

2. The PCR court appears to have based its ruling on these issues primarily on the conclusion that trial counsel was rendered ineffective

 For a petitioner to be granted Post Conviction Relief as a result of ineffective assistance of counsel, he must show both (I) that his counsel failed to render reasonably effective assistance under prevailing professional norms, and (2) that he was prejudiced by his counsel's ineffective assistance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Butler v. State*, 286 S.C. 441, 334 S.E.2d 813 (1985), *cert. denied*, 474 U.S. 1094, 106 S.Ct. 869, 88 L.Ed.2d 908 (1986). This Court will sustain the PCR, judge's factual findings and conclusions regarding ineffective assistance of counsel if there is any probative evidence to support those findings. *E.g., McCray v. State*, 317 S.C. 557, 455 S.E.2d 686 (1995); *Cherry v. State*, 300 S.C. 115, 386 S.E.2d 624 (1989).

The Record does not contain probative evidence to support the notion that counsel was ineffective in failing to move for a continuance at an earlier date or in failing to move for the admission of certain DSS records pertaining to sexual abuse of Victim's daughter. Even assuming trial counsel should have made these motions at an earlier time, Wolfe has shown no prejudice resulting from counsel's failure to do so.

 To show prejudice stemming from the late continuance motion, Wolfe would have to demonstrate that (1) the trial court would have abused its discretion in refusing to grant a continuance motion so that Wolfe could get a private competency evaluation, and (2) such a competency evaluation likely would have affected the ultimate result of the competency hearing. Wolfe presented no medical evidence at the PCR hearing suggesting he had been incompetent to stand trial or to participate in his defense. Given the absence of such evidence, Wolfe has failed to demonstrate he was prejudiced by the trial court's failure to grant a continuance.

 Wolfe has also failed to show any prejudice resulting from trial counsel's failure to move at an earlier date for admission of the DSS records. First, the trial court never

---

by virtue of adverse rulings by the trial court. Of course, trial court error does not constitute an appropriate basis for a finding of ineffective assistance of counsel. *See, e.g., Stepney v. State*, 278 S.C. 47, 292 S.E.2d 41 (1982) (issues that could have been raised on direct appeal cannot be considered on PCR application absent claims of ineffective assistance of appellate counsel).

actually ruled on the pretrial motion by DSS to quash any evidence relating to sexual abuse of Victim's daughter; rather, the judge simply expressed skepticism about the relevance of the evidence, but decided to reserve judgment. Second, it is unclear whether an earlier motion would have had any effect whatsoever on the judge's decision. Given the lack of any decision adverse to Wolfe on the motion, as well as the speculative nature of the benefit Wolfe would have derived from an earlier motion, there was no prejudice suffered, even assuming counsel's representation was ineffective.

## B. ADVICE CONCERNING GUILTY PLEA

Wolfe next argues his trial counsel was ineffective in advising him about the guilty plea procedure. We disagree.

A defendant who pleads guilty on the advice of counsel may only attack the voluntary and intelligent character of the plea by showing (1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty but would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 56–57, 106 S.Ct. 366, 369, 88 L.Ed.2d 203, 208–09 (1985). In determining guilty plea issues, it is proper to consider the guilty plea transcript as well as evidence at the PCP, hearing. *Harres v. Leeke,* 282 S.C. 131, 318 S.E.2d 360 (1984).

In the present case, Wolfe testified that his trial counsel represented to him that the judge would give him a reduced sentence if he pleaded guilty to the charges. According to Wolfe, trial counsel did not explain that the trial judge was not bound by the terms of their conversation, *i.e.,* that no enforceable "deal" had been cut.

If this is the advice trial counsel gave,[3] it was inaccurate. However, any possible misconceptions on Wolfe's part were cured by the colloquy during the actual guilty plea hearing. As noted above, the judge repeatedly asked Wolfe about the

---

**3.** in fact, it is not entirely clear whether Wolfe actually testified there was an absolute guarantee of a reduced sentence. Although some of Wolfe's testimony contradicts other portions of his testimony, he himself acknowledged at one point during the PCR hearing that no promises were made as to the sentence.

range of sentencing, and he asked Wolfe *twice* whether he understood that there were no promises and that no sentencing recommendations were binding on the judge. Wolfe indicated he understood there were no such promises. Additionally, Wolfe's lawyer stated *on the record at the guilty plea hearing* that he had informed Wolfe that although counsel hoped for a reduced sentence, there were no promises as to the actual sentence. Under these circumstances, any possible errors by trial counsel were cured by this information. *See, e.g., Rayford v. State,* 314 S.C. 46, 443 S.E.2d 805 (1994) (where transcript of guilty plea proceeding refuted applicant's claim that he did not understand the terms of a plea bargain, grant of PCR was inappropriate notwithstanding applicant's claim lawyer misadvised him); *Richardson v. State,* 310 S.C. 360, 426 S.E.2d 795 (1993)(grant of PCR, was inappropriate where after having heard incorrect information concerning guilty plea, applicant's is impressions were corrected by accurate information).

Wolfe seems to contend that counsel informed him the trial court's questions constituted a polite fiction and that they meant nothing. At the PCR, hearing, Wolfe stated repeatedly that counsel had told him the trial court's questions concerning the plea were II "routine" questions. Wolfe also testified his counsel had told him that in several other cases his counsel had in the past, counsel had never known a judge to backstep on are presentation that he would impose a reduced sentence. A statement that questions are "routine" is not an invitation to answer them untruthfully, nor does it constitute a reason to believe the questions and statements of the judge during a guilty plea proceeding mean nothing.

When one reviews Wolfe's testimony at the PCR, hearing, it is clear that Wolfe *hoped* to get a reduced sentence and *expected* to get one. Even in Wolfe's own testimony, however, it is never crystal clear that Wolfe was told he absolutely *would* get a reduced sentence. In fact, Wolfe himself acknowledged at the PCR, proceeding that he was made no promises as to the sentence he would receive. Wishful thinking regarding sentencing does not equal a misapprehension concerning the possible range of sentences, especially where one acknowledges on the record that one knows the range of sentences and that no promises have been made. The Record

contains no probative evidence suggesting any ineffective assistance by Wolfe's counsel prejudiced him or rendered his plea involuntary. *See Cherry v. State*, 300 S.C. 115, 386 S.E.2d 624 (stating "any evidence" standard for review of PCR, proceedings).

## CONCLUSION

For the foregoing reasons, the order of the PCR court is **REVERSED.**

FINNEY, C.J., and MOORE, WALLER and BURNETT, JJ., concur.