576 S.E.2d 144

**Robert Lee BURNETT, Respondent,**

v.

**STATE of South Carolina, Petitioner.**

No. 25582.

Supreme Court of South Carolina.

Submitted Dec. 5, 2002.
Decided Jan. 13, 2003.
Rehearing Denied Feb. 20, 2003.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. Mcintosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Deputy Attorney General B. Allen Bullard, Jr., and Assistant Attorney General Douglas E. Leadbitter, all of Columbia, for Petitioner.

Assistant Appellate Defender Aileen P. Clare, of Columbia, for Respondent.

Chief Justice TOAL:

Respondent, Robert Lee Burnett ("Burnett"), filed an application for post-conviction relief ("PCR"). The PCR court

granted relief, and the State filed a petition for writ of certiorari.

## FACTUAL/PROCEDURAL BACKGROUND

Burnett pled guilty to malicious injury to personal property, assault and battery of a high and aggravated nature ("ABHAN"), and three counts of pointing a firearm. He was sentenced to thirty days on the property charge, and ten years consecutive on the ABHAN charge (suspended on service of five years in prison and five years of probation). In addition, he was sentenced to three years on the first firearm charge, four years on the second firearm charge, and five years on the third firearm charge, all to be served concurrently. Burnett's aggregate sentence was ten years imprisonment, and five years of probation.[1]

Burnett did not file a direct appeal. He filed an application for PCR, alleging that his guilty plea was involuntary. The PCR judge granted relief and this Court granted certiorari to review the following issue:

Did the PCR court err in granting PCR on grounds that Burnett's guilty plea was involuntary?

## LAW/ANALYSIS

The State argues that the PCR court erred in finding that Burnett's counsel was ineffective and that his guilty plea was involuntary. We agree.

Entering a guilty plea results in a waiver of several constitutional rights, therefore the Due Process Clause requires that defendants enter into guilty pleas voluntarily, knowingly, and intelligently. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). This Court has held that, "in addition to the requirements of *Boykin*, a defendant

---

1. The charges against Burnett arose out of a single incident. Apparently, Burnett got angry with a driver in front of him on the highway and bumped his car from behind. The other driver pulled into a gas station to get help, and Burnett followed him. Burnett got out of his car and began beating the driver of the other vehicle. At some point, Burnett produced a gun, and pointed it at the driver and at two bystanders in the parking lot. He fired one shot into the driver's vehicle without injuring anyone, and then drove away.

entering a guilty plea must be aware of the nature and crucial elements of the offense, the maximum and any mandatory minimum penalty, and the nature of the constitutional rights being waived." *Pittman v. State,* 337 S.C. 597, 599, 524 S.E.2d 623, 624 (1999) (citing *Dover v. State,* 304 S.C. 433, 405 S.E.2d 391 (1991); *State v. Hazel,* 275 S.C. 392, 271 S.E.2d 602 (1980)). A plea made in ignorance of its direct consequences is entered in ignorance and is invalid. *Hazel,* 275 S.C. 392, 271 S.E.2d 602.

A defendant who pleads guilty on the advice of counsel may collaterally attack the voluntariness of his plea only by showing that (1) counsel was ineffective and that (2) there is a reasonable probability that but for counsel's errors, the defendant would not have pled guilty. *Wolfe v. State,* 326 S.C. 158, 485 S.E.2d 367 (1997). When considering an allegation on PCR that a guilty plea was based on inaccurate advice of counsel, the transcript of the guilty plea hearing will be considered to determine whether information conveyed by the plea judge cured any possible error made by counsel. *Moorehead v. State,* 329 S.C. 329, 496 S.E.2d 415 (1998). The Court will uphold the PCR court's findings if there is *any* evidence of probative value to support them. *Cherry v. State,* 300 S.C. 115, 386 S.E.2d 624 (1989).

In *Moorehead,* the defendant pled guilty to criminal sexual conduct ("CSC") in the third degree, and was sentenced to ten years, suspended after service of seven years, and five years probation. 329 S.C. 329, 496 S.E.2d 415. At the PCR hearing, the defendant testified that he pled guilty to the CSC charge based on counsel's advice that he would receive only probation. *Id.* At the plea hearing, however, the judge asked the defendant if he understood that the possible sentence for CSC was ten years, and summarized the plea agreement on the record. *Id.* The defendant said he understood the possible sentence and the plea agreement as a whole. *Id.* Based on the colloquy between the defendant and the plea judge, this Court reversed the PCR court's grant of relief, holding that "[e]ven if trial counsel erroneously informed [defendant] that his sentence would be probationary, any misconception was cured at the plea hearing." *Id.* at 333, 496 S.E.2d at 416–17.

In the case before the Court now, the colloquy between the plea judge and defendant was even more comprehensive than the one in *Moorehead*. In this case, the plea judge informed Burnett of the maximum penalties for each of his crimes (25 years if sentenced consecutively), and informed Burnett that he had not agreed to give him a particular sentence. The judge told Burnett, "there's been no promise by this Court as to what the sentence would be. You [could] get one after the other after the other. They could be concurrent, consecutive, jail time, combination. I just don't know." After asking if Burnett understood that he had not agreed to give him any particular sentence, the judge asked Burnett if anyone else had promised him anything about his sentence. Burnett indicated he understood the possible sentences, and answered that no one had made promises to him about his sentence.

At the PCR hearing, Burnett's trial counsel testified,

I'm sure I didn't tell him that he was going to get three years because I didn't have a clue what he was going to get. I'm sure I told him he could get up to 25 as did the judge he had to plea in front of. It's possible that I told him you might get three years, but I meant that loosely and I hope by my saying you might get three years didn't mean that I thought that he was necessarily, but that was certainly within the range of possible sentences.

Trial counsel testified further, "I don't tell them what a judge is going to do. I tell them what the sentence range could be, that's my practice." Trial counsel admitted that he knew three years was what Burnett wanted, and that it was *possible* Burnett could have thought he was going to get three years, but reiterated that anything he might have said regarding three years would have been qualified by a statement that he didn't know what Burnett would get.

The plea judge accepted Burnett's guilty pleas only after a very thorough questioning of Burnett's understanding of what rights he was waiving by pleading guilty, what his possible sentences were, and that the judge had not agreed to give him any particular sentence.

In our opinion, the record in this case does not indicate that trial counsel promised Burnett a three-year sentence. Regardless, any possible misconceptions on Burnett's part were

594

cured by the colloquy during the actual plea hearing. *See Moorehead; Wolfe.* For this reason, we find there is no probative evidence to support the PCR court's finding that Burnett received ineffective assistance of counsel.

### CONCLUSION

For the foregoing reasons, we **REVERSE** the PCR court's grant of relief.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.