638 S.E.2d 673

**Gary Wayne BENNETT, Respondent**

v.

**STATE of South Carolina, Petitioner.**

No. 26230.

Supreme Court of South Carolina.

Submitted June 21, 2006.

Decided Nov. 27, 2006.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Assistant Attorney General Julie M. Thames, of Columbia, for Petitioner.

Chief Attorney Joseph L. Savitz, III, of South Carolina Commission on Indigent Defense, Division of Appellate Defense, of Columbia, for Respondent.

Justice WALLER:

This Court granted the State's petition for a writ of certiorari to review the grant of post-conviction relief (PCR) to respondent Gary Wayne Bennett. Because there is no evidence in the record to show that trial counsel offered inaccurate advice to respondent or was otherwise deficient, re-

spondent failed to meet his burden of proving counsel was ineffective. Therefore, we reverse.

## FACTS

On July 19, 2001, respondent pled guilty to first degree burglary, and the trial court sentenced him to 18 years imprisonment. Respondent had appeared before the trial court the day before and expressed that he had some "differences" with trial counsel. The trial court inquired on July 19 whether counsel and respondent had resolved those differences. Counsel and respondent both responded in the negative, and respondent "reiterate[d]" to the court that he did not "feel [he was] going to get a fair trial" with appointed counsel. He therefore asked the trial court for some time so his family could hire "a private lawyer."

Noting that the offense occurred on December 25, 1999, the trial court did not grant respondent a continuance.[1] Instead, the trial court asked whether he wanted to represent himself or go forward with appointed counsel. Respondent did not want to proceed *pro se,* and he told the trial court "I just want the opportunity to have a paid attorney." He explained that counsel was not "interested in defending" him. In response, counsel told the trial court there was another attorney who was familiar with the case, had been present at two of his meetings with respondent, and could be ready to represent respondent **at trial** in "15 minutes time." Respondent, however, was also not willing to have this other attorney from the Public Defender's office represent him for trial.

At that point, the trial court gave respondent the option of one, or both, of the public defenders, or self-representation. Respondent then privately spoke with his appointed counsel, and after conferring, counsel informed the trial court that respondent wanted to plead guilty. On the record, respondent confirmed for the trial court his desire to enter a guilty plea.

The trial court went over the indictment for first degree burglary, explained that this felony is considered a violent, most serious offense, and informed respondent that it "carries

---

1. Actually, respondent was not arrested until July 2000; nonetheless, he had been incarcerated for over one year by the time of the plea.

anywhere from 15 years to life." When the trial court separately asked respondent if he understood the charge and the possible punishment, respondent replied in the affirmative. After pleading guilty, the trial court then went over the constitutional rights respondent was waiving, including the right to a jury trial. The trial court specifically asked respondent if he was satisfied with counsel's "advice about this plea," and respondent said yes.[2]

The State explained to the trial court the facts surrounding the offense. Respondent and his then-girlfriend, Amber Vrooman, had entered the victim's vacation condominium in Surfside Beach during the nighttime hours; respondent had access to the condo because he worked a pest control job. The pair took a television, a vacuum cleaner, and a VCR. Vrooman was also charged in the case. According to the State, Vrooman had been the person who informed police about the case after she and respondent had an "altercation" and she was willing to testify as a State's witness to the facts of the crime. The trial court sentenced respondent to 18 years.

Respondent did not appeal, but he filed for PCR. In his PCR application, respondent alleged ineffective assistance of counsel and that his Sixth Amendment right to "counsel of choice" had been revoked.

At the PCR hearing, respondent testified that he first met with counsel in September 2000 for his bond hearing and then did not meet with him again until January 2001.[3] In June 2001, respondent again met with counsel, and, according to respondent, counsel told him he could get him 15 years in a plea bargain with the solicitor. Respondent testified he told counsel he did not want to plead guilty because he had not committed **first degree** burglary; according to respondent's PCR testimony, he was not in the condo in the nighttime, but

---

2. Additionally, when the trial court made its on-the-record finding that respondent's plea was "freely, voluntarily, and intelligently made," the trial court specifically noted that although respondent had "some disagreements" with counsel, respondent was "satisfied with [counsel's] advice concerning this plea."

3. At this time, respondent also had a pending murder charge, and respondent testified that they discussed matters related to the murder charge but did not discuss the first degree burglary charge at issue in the instant case.

rather was there at eight in the morning. Significantly, respondent further testified that counsel told him if he went to trial and was found guilty, the trial judge would sentence him to life imprisonment.

The PCR court found: (1) respondent had not knowingly and intelligently waived his right to a direct appeal; and (2) counsel was ineffective. The PCR court granted respondent a new trial.

## ISSUE[4]

Did the PCR court err in granting respondent a new trial based on ineffective assistance of counsel?

## DISCUSSION

The State argues the PCR court erred in finding that respondent's trial counsel was ineffective in advising respondent to plead guilty. We agree.

There is a two-prong test for evaluating claims of ineffective assistance of counsel. The first prong of the test requires that a defendant show that his counsel's performance was deficient such that it falls below an **objective** standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Alexander v. State*, 303 S.C. 539, 402 S.E.2d 484 (1991). The second part of the test requires a defendant to show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* Where there has been a guilty plea, the applicant must prove prejudice by showing that, but for counsel's errors, there is a reasonable probability he would not have pleaded guilty and instead

---

4. We note there is no belated direct appeal issue before the Court because respondent did not file for review as required by the Appellate Court Rules. *See* Rule 227(i)(1), SCACR (when the PCR court has affirmatively found that the right to a direct appeal was not knowingly and intelligently waived, a petition for a writ of certiorari shall contain a question raising this issue; in addition, a brief addressing the direct appeal issues shall be served and filed); *Davis v. State*, 288 S.C. 290, 291 n. 1, 342 S.E.2d 60 (1986) (even where the PCR court makes a finding that the right to a direct appeal was not knowingly and intelligently waived, the PCR court "may not grant relief on this basis;" instead, the PCR applicant must petition this Court for review).

would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Alexander v. State, supra.* Furthermore, "[a] defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases." *Richardson v. State*, 310 S.C. 360, 363, 426 S.E.2d 795, 797 (1993).

In determining guilty plea issues, it is proper to consider the guilty plea transcript as well as evidence at the PCR hearing. *Harres v. Leeke*, 282 S.C. 131, 318 S.E.2d 360 (1984). This Court will uphold the findings of the PCR judge when there is any evidence of probative value to support them. *Cherry v. State*, 300 S.C. 115, 386 S.E.2d 624 (1989). The Court, however, will not uphold the findings when there is no probative evidence to support them. *Holland v. State*, 322 S.C. 111, 470 S.E.2d 378 (1996).

We find the PCR court erred in finding that counsel was deficient. Both the plea transcript and respondent's testimony at the PCR hearing clearly indicate that counsel did consult with respondent and advised him that he should enter a guilty plea. Taking respondent's version of events, counsel specifically stated that if respondent went to trial and a jury found him guilty, he would get a life sentence.[5] Thus, counsel advised respondent to plead guilty based, at least in part, on the likelihood of what counsel believed the sentence would be. We find that this is not an inappropriate concern for counsel

---

5. Counsel testified at the PCR hearing that respondent never told him the burglary did not occur in the nighttime and that Vrooman was ready to take the witness stand for the State on the day respondent entered his plea. Finally, counsel testified that he thought it was in respondent's best interest to plead guilty because if respondent went to trial and was convicted, he would not have been surprised at a life sentence. According to counsel, he told respondent that the trial court "may very well" sentence him to life imprisonment if he went to trial; counsel denied telling respondent that the trial court **would** sentence him to life. The PCR court, however, obviously believed respondent's testimony because it specifically found counsel told respondent that if he was convicted, he would be given a life sentence by the trial judge. That determination is entitled to deference. *Solomon v. State*, 313 S.C. 526, 529, 443 S.E.2d 540, 542 (the Court gives great deference to a PCR court's findings when matters of credibility are involved).

to communicate to his client. *Cf. Wade v. State*, 698 S.W.2d 621, 623 (Mo.Ct.App.1985) (where appellant claimed his guilty plea was not voluntary because counsel told him he would receive a life sentence if he went to trial, the court rejected the claim, stating that "[c]ounsel should discuss with clients the potential results of trial, and life imprisonment was a possible sentence on both charges" against appellant).

■ Indeed, counsel's advice that respondent would have gotten a life sentence was not technically incorrect because life is the maximum sentence for first degree burglary. See S.C.Code Ann. § 16–11–311(B) (2003) (first degree burglary "is a felony punishable by life imprisonment"); *see also Carter v. State*, 329 S.C. 355, 361, 495 S.E.2d 773, 776 (1998) (where counsel's advice regarding possible maximum sentence was correct, the Court held that counsel's performance was not deficient or ineffective); *Wade v. State*, 698 S.W.2d at 623 (counsel should discuss the potential results of trial with clients).[6]

Moreover, while respondent certainly **subjectively** believed that counsel was unprepared for trial, respondent's own testimony at the PCR hearing also established that the two primary fact witnesses at trial would have been him and Vrooman. Because any trial would essentially be respondent's word against Vrooman's, there can be no claim that counsel should have further investigated the case to discover other evidence or witnesses. Finally, it is evident from the plea transcript that counsel was willing to go to trial, or would have allowed his associate from the Public Defender's office to try

---

**6.** Regardless, even where counsel offers misinformation, this deficiency can be cured where the trial court properly informs the defendant about the sentencing range. *See Wolfe v. State*, 326 S.C. 158, 485 S.E.2d 367 (1997) (even if counsel gives erroneous advice, an applicant is not entitled to PCR where any misconceptions are cured by the colloquy during the guilty plea proceeding); *Burnett v. State*, 352 S.C. 589, 576 S.E.2d 144 (2003) (any possible misconceptions on PCR applicant's part were cured by the colloquy during the plea proceeding); see also *Moorehead v. State*, 329 S.C. 329, 333, 496 S.E.2d 415, 416 (1998) ("the transcript of the guilty plea hearing will be considered to determine whether any possible error by counsel was cured by the information conveyed at the plea hearing"). Here, the trial court clearly told respondent that the sentence for first degree burglary "carries **anywhere** from 15 years to life." (Emphasis added).

the case, but respondent obviously wanted a privately retained attorney.

Respondent simply did not meet his burden of proving the first prong of the *Strickland* test. *E.g., Bannister v. State,* 333 S.C. 298, 509 S.E.2d 807 (1998) (the applicant has the burden of proving the allegations of the PCR petition). In order for respondent to get relief, he must demonstrate it was because of counsel's deficiency that he was induced to plead guilty. What respondent did prove, however, is the following: (1) he wanted to go to trial, but only with a private attorney; (2) the trial court did not grant him a continuance to allow his family more time to hire a private attorney; and (3) after conferring with counsel, he decided to enter a guilty plea. It appears that respondent's real argument on PCR is that the trial court should have granted respondent's request for a continuance to enable him to retain private counsel. Trial error, however, "does not constitute an appropriate basis for a finding of ineffective assistance of counsel." *Wolfe v. State,* 326 S.C. 158, 162 n. 2, 485 S.E.2d 367, 369 n. 2 (1997); *cf. Richardson v. State, supra* (where a defendant pleads guilty, he may **only** attack the voluntary and intelligent character of the guilty plea by showing the advice he received from counsel was not competent). Here, although the PCR court did find respondent was entitled to a belated appeal, respondent did not request review of that finding from this Court. *See* Rule 227(i)(1), SCACR. Therefore, respondent has abandoned any direct appeal issues.

We hold there is no probative evidence in the record that counsel deficiently advised respondent to plead guilty; accordingly, we reverse the PCR court's grant of a new trial. See *Holland v. State, supra* (this Court will not uphold the findings of the PCR court when there is no evidence of probative value to support them).

**REVERSED.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur.