652 S.E.2d 402

**James STALK, Respondent,**

v.

**STATE of South Carolina, Petitioner.**

**No. 4298.**

Court of Appeals of South Carolina.

Heard Sept. 11, 2007.

Filed Oct. 5, 2007.

Rehearing Denied Nov. 16, 2007.

---

**3.** We decide this case without oral argument pursuant to Rule 215, SCACR.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attor-

ney General Salley W. Elliott, Assistant Attorney General David Spencer, all of Columbia, for Petitioner.

Joseph L. Savitz, III, of Columbia, for Respondent.

ANDERSON, J.

The post-conviction relief (PCR) court granted James Stalk's (Stalk) application for relief after finding Stalk's guilty plea was involuntary due to counsel's unreasonable conduct and failure to prepare. This court granted the State's petition to review the PCR court's decision. We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

Stalk was indicted on one count of first-degree burglary and six counts of second degree burglary, four counts of grand larceny, and one count of aggravated resisting arrest. The first-degree burglary was reduced to second-degree. Stalk pled guilty to all charges. He was sentenced to (1) fifteen years imprisonment for the seven burglary charges, with one count served consecutively to the other six; (2) ten years for the grand larceny indictments, served consecutively to the burglary sentences; and (3) ten years for aggravated resisting arrest, served consecutively to the larceny sentences. In the aggregate, Stalk was sentenced to fifty years imprisonment.

Stalk agreed with and affirmed the State's recitation of the facts at the guilty plea proceeding. The State reported that officers investigating the burglary and larceny crimes identified Stalk as a suspect and visited his residence to question him. While there, the officers observed a number of items in Stalk's apartment that had been reported stolen. When they attempted to arrest Stalk he resisted and injured the officers in the struggle that ensued.

At the plea proceeding Stalk testified that he was thirty-two years old and had an eleventh grade education. He worked in construction and was not married. He admitted to treatment for drug abuse that he did not complete. Stalk denied any physical or emotional problems that might prevent him from understanding why he was in court. The plea court asked Stalk:

Q: Do you understand that each of these seven indictments allege that you did in Lancaster County on the dates specified in the indictments willfully and unlawfully entered [sic] the dwellings of the persons specified in the indictments without consent and with the intent to commit a crime therein? Do you understand that?

A: Yes, sir.

. . .

Q: Do you understand that the court could sentence you up to fifteen years in regard to each indictment for burglary in the second degree?

A: Yes, sir.

Q: In the four indictments charging you with grand larceny it is alleged that you did in Lancaster County on the dates specified in each of the four different indictments feloniously take and carry away the personal property of the said individuals named in the indictments with the intent to deprive the owners permanently of the possession of said property and that the property was valued at more than five thousand dollars in each of the four indictments. Do you fully understand the charge of grand larceny?

A: Yes, sir.

Q: Do you understand the court could have sentenced you up to ten years in regard to each of the four different indictments on each offense?

A: Yes, sir.

Q: The last indictment alleges that you did in Lancaster County on or about August 11, 1998, knowingly and willfully beat, injure or wound Captain Rollings and Lt. Bailey, law enforcement officers of this State, while resisting the efforts of said officers to place you under lawful arrest. Do you understand this charge of resisting arrest . . . ?

A: Yes, sir.

Q: Do you understand the court could sentence you to up to ten years in prison for a violation of that law?

A: Yes, sir.

Q: Do you fully understand that adding all of the maximum sentences that could be imposed you could receive a

sentence of up to one hundred and fifty-five years in prison on all of these charges?

A: Yes, sir.

Q: Understanding the charges contained in all of the separate indictments against you, understanding the maximum sentences you could receive, how do you wish to plead, guilty or not guilty?

A. Guilty.

The plea court advised Stalk that by entering a guilty plea he waived or gave up his constitutional rights to (1) remain silent and not be compelled to testify against himself; (2) be tried by a jury of peers or equals to which the State would be required to prove his guilt beyond a reasonable doubt; and (3) confront and cross-examine any witnesses the State called to testify against him at a trial of his case. The court asked Stalk:

Q: Do you wish to give up these rights and plead guilty today?

A: Yes, sir.

Stalk professed he was not threatened or forced to plead guilty or promised anything in exchange for pleading guilty. He confirmed he entered the plea of his own free will and accord. Stalk then stated he was guilty and he did commit the seven burglaries, four grand larcenies, and one resisting arrest as indicated in the factual record and in the indictments. The plea court questioned Stalk's counsel as follows:

Q: Have you had a full opportunity to explain to [Stalk] the charges contained in each of these bills of indictment, advise him of all of his constitutional rights as well as the maximum sentences he could receive?

A: Yes, sir.

Q: Does Mr. Stalk fully understand these matters?

A: I believe he does, your honor.

Q: Does he indicate how he wishes to plead?

A: Guilty.

Q: From your investigation of his cases do you agree with his decision?

A: I do, your honor.

Stalk declared he was satisfied with his counsel's representation in the following colloquy:

Q: Are you satisfied with the services of your lawyer, Mr. [ ]?

A: Yes, sir.

Q: Has he done everything you have asked him to do for you in regards to your cases?

A: Yes, sir.

Q: Has he refused to do anything you have asked him to do?

A: No, sir.

The court accepted Stalk's plea of guilty, finding it was voluntarily, knowingly and intelligently made, with the advice and counsel of a competent lawyer with whom Stalk said he was satisfied. Prior to sentencing, Stalk's counsel addressed the court:

[I]t is rare that anybody with near this number of pending charges would sit down with me and then later sit down with me and the solicitor and this is what I did. While Mr. Stalk certainly is a burglar, he is an honest burglar, he told them exactly what happened and has not tried to hide from the consequences of his actions. He had done some time in jail, got out, he was engaged, she was pregnant, he was unable to find work, and he resorted back to bad habits. He has been in jail a while now, he understands that he could have been facing as you indicated a hundred and fifty-five years, he could have been facing a potential life sentence on the original charges, and I indicated to him that any sort of negotiations less than that would certainly be to his advantage. He left it in my and the solicitor's hands to come up with this negotiation and he has cooperated in basically leaving it up to us and the State to come up with something less than the worse case scenario. We ask for mercy.

Stalk filed an application for post-conviction relief, which the PCR court granted.[1] The State appealed and filed a petition for writ of certiorari in the Supreme Court. The matter was transferred to this court and the State's petition granted.

---

1. Stalk's attorney was not available to testify at the PCR hearing. The PCR court held the record open for the submission of his testimony by deposition. However, Stalk's counsel remained unavailable and at-

## ISSUES

I. Did the PCR court err in finding Stalk's guilty plea was rendered involuntary by the ineffective assistance of his counsel?

II. Did the PCR court err in granting relief when Stalk presented no evidence of prejudice?

## STANDARD OF REVIEW

 This court gives great deference to the PCR court's findings of fact and conclusions of law. *Porter v. State,* 368 S.C. 378, 383, 629 S.E.2d 353, 356 (2006). On review, a PCR court's findings will be upheld if there is any evidence of probative value sufficient to support them. *Id.* (citing *Cherry v. State,* 300 S.C. 115, 119, 386 S.E.2d 624, 626 (1989)). However, where there is no evidence of probative value to support the findings of the PCR court, the appellate court will reverse. *Bright v. State,* 365 S.C. 355, 358, 618 S.E.2d 296, 298 (2005); *Magazine v. State,* 361 S.C. 610, 615, 606 S.E.2d 761, 763 (2004) (citing *Pierce v. State,* 338 S.C. 139, 144, 526 S.E.2d 222, 225 (2000)).

## LAW/ANALYSIS

The essential allegation raised by Stalk involves the involuntary nature of his guilty plea due to the alleged lack of preparation and unreasonable conduct of his appointed counsel.

In the order granting Stalk's application for relief, the PCR court reasoned:

[Stalk] testified that he was coerced by his counsel who seemingly was unprepared. The applicant testified that his first meeting with his counsel, [ ], was in the presence of the prosecuting attorney, [ ]. The applicant further testified that his counsel never met with him to discuss his case, never discussed the pending charges, and never discussed possible defenses. Despite having pleaded guilty and answering the Court in the affirmative at this guilty plea, the applicant

tempts to depose him were unsuccessful. The record on appeal includes Stalk's PCR testimony, the transcript of the plea hearing, and other records of the Clerk of Court.

testified that he understood that the sentences would all run concurrently. The applicant further testified that he was coerced into pleading guilty because he had no confidence in his lawyer. He stated that he would probably not have pled guilty had his lawyer been prepared.

Upon cross-examination, Mr. Stalk insisted that [his attorney] failed to call the co-defendant. He also confirmed previous testimony that [his attorney] had only met with him once prior to entering the plea and that the meeting took place in the presence of the prosecuting attorney. As such [Stalk] was unduly coerced into the plea agreement and would have otherwise insisted on going to trial.

The PCR court concluded:

[Stalk] has established that he did not receive effective assistance from his court appointed attorney. This Court further finds that the State has offered no evidence to refute the allegations of [Stalk]. Furthermore, this Court finds that due to the conduct of [Stalk]'s attorney, [Stalk] was prejudiced in not having the opportunity to go forward with trial. Based on [Stalk]'s unrefuted testimony, this Court finds that there is a reasonable probability that [Stalk] would have insisted on going to trial.

The State contends that the PCR court erred in granting Stalk relief. We agree.

■■ In a PCR proceeding, the applicant bears the burden of establishing that he is entitled to relief. *Suber v. State,* 371 S.C. 554, 558, 640 S.E.2d 884, 886 (2007) (citing *Caprood v. State,* 338 S.C. 103, 109, 525 S.E.2d 514, 517 (2000)); *Bannister v. State,* 333 S.C. 298, 302, 509 S.E.2d 807, 809 (1998). "There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case." *Morris v. State,* 371 S.C. 278, 282, 639 S.E.2d 53, 55 (2006); *Magazine v. State,* 361 S.C. 610, 617, 606 S.E.2d 761, 764 (2004).

*Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), established a two-prong test for evaluating claims of ineffective assistance of counsel. The first prong of the test requires that a defendant prove his counsel's deficiency by demonstrating counsel's performance fell below an objective standard of reasonableness. *Bennett v. State,* 371 S.C. 198, 203, 638 S.E.2d 673, 675 (2006) (citing *Strickland* ).

The second part of the test requires a defendant to show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.*

An applicant may attack the voluntary, knowing, and intelligent character of a guilty plea entered on the advice of counsel by demonstrating that counsel's representation was below an objective standard of reasonableness. *Porter v. State,* 368 S.C. 378, 383–84, 629 S.E.2d 353, 356 (2006); *Roscoe v. State,* 345 S.C. 16, 20, 546 S.E.2d 417, 419 (2001). The "prejudice," requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). In other words, the applicant must prove prejudice by showing that, but for counsel's inadequacy, there is a reasonable probability he would not have pleaded guilty and, instead, would have insisted on going to trial. *Suber,* 371 S.C. at 558, 640 S.E.2d at 886.

To find a guilty plea is voluntarily and knowingly entered into, the record must establish the defendant had a full understanding of the consequences of his plea and the charges against him. *Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Roddy v. State,* 339 S.C. 29, 33–34, 528 S.E.2d 418, 421 (2000). "A defendant's knowing and voluntary waiver of the constitutional rights which accompany a guilty plea may be accomplished by colloquy between the Court and the defendant, between the Court and defendant's counsel, or both." *Pittman v. State,* 337 S.C. 597, 601, 524 S.E.2d 623, 625 (1999).

"[T]he voluntariness of a guilty plea is not determined by an examination of the specific inquiry made by the sentencing judge alone, but is determined from both the record made at the time of the entry of the guilty plea and the record of the post-conviction hearing." *Harres v. Leeke,* 282 S.C. 131, 133, 318 S.E.2d 360, 361 (1984). "When determining issues relating to guilty pleas, this Court will consider the entire record, including the transcript of the guilty pleas and the evidence presented at the PCR hearing." *Roddy,* 339 S.C. at 33, 528 S.E.2d at 420. In considering an allegation on PCR that a guilty plea was based on inaccurate advice of counsel, the transcript of the guilty plea hearing will be considered to

determine whether any possible error by counsel was cured by the information conveyed at the plea hearing. *Wolfe v. State,* 326 S.C. 158, 165, 485 S.E.2d 367, 370 (1997).

## 1. Ineffective Assistance of Counsel

Stalk claimed his attorney met with him only one time prior to the plea hearing and was inadequately prepared. He asserted counsel did not go over the warrants, did not ask him about potential defenses or witnesses, did not inform him of his right to a jury trial, and did not ask about Stalk's sentencing expectations. Stalk admitted his attorney told him that he faced a potential one hundred fifty-five year aggregate sentence if convicted at trial. Additionally, Stalk averred he only had ten or fifteen minutes to make up his mind about whether to plead guilty. He stated he felt coerced to plead guilty because he lacked confidence in his attorney.

Testimony from Stalk's counsel at the plea hearing indicated he first sat down with Stalk alone and then "later" sat down with Stalk and the Solicitor. Counsel believed Stalk understood he could face one hundred fifty-five years—a potential life sentence—if found guilty at trial. Consequently, he advised Stalk that any negotiation resulting in less time would be to his advantage.

On cross-examination at the PCR hearing, Stalk initially stated he met with his attorney one time, in the presence of the Solicitor. However, on redirect, Stalk's testimony suggests he met with counsel earlier in the day before meeting with counsel and the Solicitor:

Q: [Your attorney] indicates in his statement to the court that he had met with you prior to—how soon prior to that guilty plea did he meet with you? He said he met with you before meeting with you and [the Solicitor]. How much time elapsed from that first meeting and your meeting with—

Stalk: On the same day.

Q: Was it the same day?

Stalk: The same day it was a bond hearing and I met with him about a bond hearing.

Q: Prior to meeting with him and [the Solicitor] did you met with [your attorney] also that same day before meeting with [the Solicitor]?

Stalk: I met with him here, back here.

In our view, Stalk's conflicting testimony provides little reliable evidence that he met only once with his attorney.

We do not agree with the PCR court that Stalk established ineffective assistance of his court appointed attorney. In basing his finding on Stalk's "unrefuted testimony," the PCR court apparently disregarded Stalk's testimony at the plea hearing. Stalk's PCR testimony blatantly and completely contradicted his earlier attestations at the plea hearing concerning the voluntariness of his guilty plea. At the PCR proceeding Stalk averred:

Stalk: When I went up there, mostly I was talking to the Judge. He asked me did I understand what was going on and I said, "Yes." He asked me did I know what I was pleading to and I said, "Yes."

Q: Why did you say that? When he was asking you these questions, did you really understand what he was asking?

Stalk: No, I was still mixed up.

Q: Why didn't you stop him and tell him you didn't understand?

Stalk: I don't know, I don't know.

The transcript of the guilty plea clearly refutes Stalk's assertion that he did not understand the terms of the guilty plea. *See Rayford v. State,* 314 S.C. 46, 48–49, 443 S.E.2d 805, 806 (1994) (where transcript of guilty plea proceeding refuted applicant's claim that he did not understand the terms of a plea bargain, grant of PCR was inappropriate notwithstanding applicant's claim lawyer misadvised him); *see also Moorehead v. State,* 329 S.C. 329, 333, 496 S.E.2d 415, 417 (1998) ("Respondent's explanation that he answered the trial court affirmatively on counsel's alleged advice that the questions were meaningless does not support the grant of PCR.").

The plea colloquy record indicates Stalk was fully informed of his constitutional rights, understood the crimes with which he was charged, and was cognizant of the maximum sentences he might receive. Any possible misconceptions concerning his constitutional rights, the charges, or potential sentences on

Stalk's part were cured by the colloquy during the essentially perfect plea proceeding conducted by the learned judge. *See Pittman*, 337 S.C. at 601, 524 S.E.2d at 625; *Wolfe*, 326 S.C. at 165, 485 S.E.2d at 370.

## 2. Prejudice

Stalk maintained that he "probably would have requested a jury trial" had his attorney spent time with him, properly prepared his case, and informed him of the charges and penalties he faced. Although Stalk claimed his attorney did not "do what he was supposed to do," he was unable to tell the court what his attorney could have done to help his case.

Stalk: I would have advised him to bring my co-defendant, my co-defendant on the same charges I got.

Q: I'm not sure if I am following you. You are saying that you would have wanted your co-defendant indicted for the same charges?

Stalk: Yes, sir.

Q. Well, how would that have helped your case?

Stalk: I don't know, but it would probably be more than it did.

■■■ If, in fact, Stalk meant to suggest his attorney should have called the co-defendant as a witness, he still failed to show how he was prejudiced by the lack of that testimony. "This Court has repeatedly held a PCR applicant must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial." *Bannister v. State*, 333 S.C. 298, 303, 509 S.E.2d 807, 809 (1998); *see, e.g., Pauling v. State*, 331 S.C. 606, 503 S.E.2d 468 (1998); *Glover v. State*, 318 S.C. 496, 458 S.E.2d 538 (1995); *Underwood v. State*, 309 S.C. 560, 425 S.E.2d 20 (1992); *Jackson v. State*, 329 S.C. 345, 495 S.E.2d 768 (1998). Mere speculation of what a witness' testimony may be is insufficient to satisfy the burden of showing prejudice in a petition for PCR. *Porter v. State*, 368 S.C. 378, 386–87, 629 S.E.2d 353, 358 (2006) (holding no evidence showed counsel's failure to interview a potential witness would have yielded a result different from that which defendant's counsel believed at the time of the plea; defendant pled guilty in light of the complete information that was available at that time).

In addition, Stalk testified he believed his sentences would run concurrently rather than consecutively, suggesting he would not have pled guilty had he known otherwise. There is no evidence, whatsoever, in the record, prior to Stalk's PCR testimony, that he was induced to plead guilty based his understanding the sentences would run concurrently. "Wishful thinking regarding sentencing does not equal a misapprehension concerning the possible range of sentences, especially where one acknowledges on the record that one knows the range of sentences and that no promises have been made." *Wolfe,* 326 S.C. at 165, 485 S.E.2d at 371. Moreover, counsel's plea negotiations for Stalk proved advantageous. The first degree burglary count was reduced to second degree, and Stalk received a sentence considerably less than the one hundred fifty-five years he might have received if convicted by a jury. *See Bright v. State,* 365 S.C. 355, 360, 618 S.E.2d 296, 298 (2005) (reversing PCR court's grant of relief when defense counsel negotiated favorable plea on respondent's behalf).

## *CONCLUSION*

Although this court generally affords great deference to the PCR court's findings, in this case we conclude the record is devoid of any probative evidence to support granting Stalk post-conviction relief. Accordingly, we **REVERSE** the decision of the PCR court and **REINSTATE** Stalk's guilty plea and sentences.

HEARN, C.J. and KITTREDGE, J. concur.