**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Angelo Horace Taylor, Respondent,

v.

State of South Carolina, Petitioner.

Appellate Case No. 2022-001571

———————————

Appeal From Greenville County
Eugene C. Griffith, Jr., Circuit Court Judge

———————————

Unpublished Opinion No. 2025-UP-323
Submitted June 2, 2025 – Filed September 24, 2025

———————————

**AFFIRMED**

———————————

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, and Senior
Assistant Deputy Attorney General Melody Jane Brown,
all of Columbia, for Petitioner.

Senior Appellate Defender Kathrine Haggard Hudgins, of
Columbia, for Respondent.

———————————

**PER CURIAM:** In this action for post-conviction relief (PCR), Angelo Horace Taylor was granted relief from his 2019 *Alford*[1] plea for attempted armed robbery and involuntary manslaughter. The State argues the PCR court erred in finding trial counsel was ineffective and in finding Taylor was prejudiced by trial counsel's failure to accurately advise him on his possible maximum sentence. We affirm.

**FACTS/PROCEDURAL HISTORY**

In 2018, Taylor stood trial for murder, attempted armed robbery, and possession of a weapon during the commission of a violent crime. During jury deliberation, the jury twice notified the trial court it was deadlocked. After the second notification, the trial court gave the jury an *Allen*[2] charge. Shortly thereafter, Taylor entered an *Alford* plea to attempted armed robbery and involuntary manslaughter.[3] The jury left the courtroom after the *Allen* charge at 4:04 p.m., and the plea concluded at 4:35 p.m. The plea colloquy follows:

> **The Court:** You understand, Mr. Taylor that [an *Alford* plea] doesn't change the consequences in any way? You understand that?
>
> **The Defendant:** Yes, sir.
>
> **The Court:** How many days jail does he get?
>
> **Solicitor:** 1019
>
> **The Court:** You understand that we can sit here. You've been through a jury trial. I'm not going to go through your rights. You know what they are. You can sit here and wait for this jury to come to a determination. You understand that?
>
> **The Defendant:** Yes, sir.

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 37 (1970) (holding a guilty plea can be accepted even if the defendant maintains his innocence provided the plea is made voluntarily and intelligently, and there is a strong factual basis for the plea).
[2] *Allen v. U.S.*, 164 U.S. 492, 501 (1896) (holding a trial court may instruct a deadlocked jury to reconsider their positions and attempt to reach a unanimous verdict).
[3] The State dismissed the weapons charge.

**The Court:** And you want to go ahead with this plea; is that right?

**The Defendant:** Yes, sir.

**The Court:** Anything you want to tell me?

**The Defendant:** No, sir.

**The Court:** No? All right.

. . . .

**The Court:** Anything you want to say?

**The Defendant:** That night, nobody intended for none of that to happen. I want to apologize to the family of the victim cause I didn't – I didn't kill nobody, but I understand how the law works.

**Plea Counsel:** There's a lot of evidence. We understand that and he's doing it under *Alford*.

**The Court:** Yeah, I know. He's doing it under *Alford*. That's not accepting responsibility.

The plea court sentenced Taylor to five years' imprisonment for involuntary manslaughter consecutive to twenty years' imprisonment for attempted armed robbery. Taylor did not file a direct appeal.

In his amended PCR application, Taylor alleged ineffective assistance of plea counsel for advising him "the attempted armed robbery was [a] charge that maxed out at 65% when it is an 85% charge." Taylor further alleged "due process violations because the plea was not knowingly and voluntarily made due [to] the applicant[] not understanding the maximum sentence he faced when he pled guilty."

At the PCR hearing, Taylor's PCR counsel argued that because of the hurried nature of the decision to plead guilty, Taylor did not realize he was pleading to a no-parole offense. Taylor testified that after the *Allen* charge, trial counsel and the State approached the trial court and discussed his case "or the verdict," and Taylor heard the trial court say "it beats life." Taylor stated, "I figured I would get five with the involuntary manslaughter, but I thought I'd at least, on the attempted

armed robbery, get about . . . ten or 15. . . . [and 65% of that time] . . . and not consecutive." Taylor claimed he would not have pled guilty if he had known he was pleading to a violent charge. Taylor stated the decision to plead was rushed, "which is why the *Alford* plea, because I didn't understand the context of the plea." Taylor stated plea counsel told him "the charge I was pleading to, that my time would carry 65 percent, so I would do a lesser amount of time incarcerated."

Plea counsel testified Taylor always planned to stand trial, and before trial, he did not discuss the percentage of the sentence Taylor would have to serve if convicted of attempted armed robbery. He did not have any notes showing that he had discussed with Taylor that attempted armed robbery was a no-parole offense. Plea counsel stated he "must" have discussed the possible maximum sentences for murder and attempted armed robbery before trial but he did not have a specific memory of it. He said the State offered the plea and "it might have even been at the suggestion of [the trial court]." He stated "things moved really fast" after the plea was offered. Plea counsel explained it was his normal practice to discuss maximum potential sentences with clients before a plea but he had no specific recollection of such a discussion happening in this case. He recalled Taylor was "very enthusiastic" about the plea, he discussed the plea with Taylor for "maybe 15 minutes at the most," and the plea was "rushed." Plea counsel testified it was possible that Taylor "heard involuntary" and thought he would receive close to time served.

The PCR court found Taylor's testimony that his guilty plea was based on inaccurate sentencing advice was convincing and uncontradicted. It found the deficiency of plea counsel's advice was not cured by the plea colloquy and Taylor's plea was not knowingly and intelligently made. The PCR court found Taylor was prejudiced by plea counsel's deficiency because he would not have pled guilty if he had known that the attempted armed robbery "was an 85% charge," but instead, he would have waited on the jury verdict. The PCR court granted Taylor post-conviction relief.

**ISSUE ON APPEAL**

Was plea counsel's performance deficient such that it rendered Taylor's guilty plea involuntary?

**STANDARD OF REVIEW**

"[Appellate courts] will uphold the findings of the PCR court when there is any evidence of probative value to support them." *Taylor v. State*, 422 S.C. 222, 226,

810 S.E.2d 862, 864 (2018). "However, [appellate courts] will reverse the PCR court's decision when it is controlled by an error of law or unsupported by the evidence." *Id.* "We give great deference to a judge's findings when matters of credibility are involved since we lack the opportunity to directly observe the witnesses." *Solomon v. State*, 313 S.C. 526, 529, 443 S.E.2d 540, 542 (1994), *overruled on other grounds by, State v. Cheeks*, 401 S.C. 322, 737 S.E.2d 480 (2013).

## LAW/ANALYSIS

The State argues the PCR court impermissibly shifted the burden of proof to the State to disprove Taylor's testimony. We disagree.

"The applicant in a PCR hearing bears the burden of establishing he is entitled to relief." *Goins v. State*, 397 S.C. 568, 573, 726 S.E.2d 1, 3 (2012). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Sellner v. State*, 416 S.C. 606, 610-11, 787 S.E.2d 525, 527 (2016) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). "The two-part test also 'applies to challenges to guilty pleas based on ineffective assistance of counsel.'" *Id.* At 611, 787 S.E.2d 525, (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). "A defendant who enters a plea on the advice of counsel may only attack the voluntary and intelligent character of a plea by showing that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty, but would have insisted on going to trial." *Id.* (quoting *Holden v. State*, 393 S.C. 565, 572, 713 S.E.2d 611, 615 (2011)).

"[T]here is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case." *Edwards v. State*, 392 S.C. 449, 456, 710 S.E.2d 60, 64 (2011) (quoting *Ard v. Catoe*, 372 S.C. 318, 331, 642 S.E.2d 590, 596 (2007)). "To find a guilty plea is voluntarily and knowingly entered into, the record must establish the defendant had a full understanding of the consequences of his plea and the charges against him." *Holden v. State*, 393 S.C. 565, 572, 713 S.E.2d 611, 615 (2011) (quoting *Roddy v. State*, 339 S.C. 29, 33, 528 S.E.2d 418, 421 (2000)). Before a court can accept a guilty plea, "a defendant must be aware of the privilege against self-incrimination, the right to a jury trial, and the right to confront one's accusers." *Roddy*, 339 S.C. at 33, 528 S.E.2d at 421.

"In addressing the adequacy of a PCR applicant's guilty plea, it is proper to consider both the guilty plea transcript and the evidence presented at the PCR hearing." *Sellner*, 416 S.C. at 611, 787 S.E.2d at 527.

> Specifically, the voluntariness of a guilty plea is not determined by an examination of a specific inquiry made by the sentencing judge alone, but is determined from both the record made at the time of the entry of the guilty plea, and also from the record of the PCR hearing.

*Holden*, 393 S.C. at 573, 713 S.E.2d at 615 (quoting *Roddy*, 339 S.C. at 33, 528 S.E.2d at 420).

Here, the PCR hearing transcript supports Taylor's contention that he did not have correct sentencing advice and therefore his plea was not knowing and voluntary. The record shows plea counsel did not properly discuss with Taylor the possible sentence he was facing and, therefore, Taylor did not know the maximum sentence he faced. Plea counsel stated he did not remember discussing the amount of time Taylor might have to serve for the attempted armed robbery charge. Taylor stated plea counsel told him that the charge he was pleading to carried a lesser amount of time incarcerated. We note the PCR court was in the best position to judge the credibility of Taylor's testimony that he did not have a full understanding of the consequences of his decision to plead guilty. Taylor has demonstrated that, in the "rushed" circumstances of this plea, plea counsel was deficient in his representation of Taylor by not fully informing him of the consequences of the plea. The PCR court's findings of fact on this matter are supported by the record.

Often, our courts have found any alleged deficiency in plea counsel's representation was cured by the plea colloquy. *See Holden*, 393 S.C. at 575, 713 S.E.2d at 616 (noting multiple cases in which the grant of PCR was reversed because the plea colloquy cured any deficiency). However, in those cases, unlike here, the plea colloquy was comprehensive and thorough. *See Bennett v. State*, 371 S.C. 198, 205 n.6, 638 S.E.2d 673, 676 n.6 (2006) ("[E]ven where counsel offers misinformation, this deficiency can be cured where the trial court properly informs the defendant about the sentencing range."); *Wolfe v. State*, 326 S.C. 158, 165, 485 S.E.2d 367, 370 (1997) (reversing grant of PCR and recognizing that in considering an allegation on PCR that a guilty plea was based on inaccurate advice of counsel, the transcript of the guilty plea hearing will be considered to determine whether any possible error by counsel was cured by the information conveyed at the plea hearing).

Here, the plea colloquy was not sufficient to demonstrate that Taylor's plea was knowing and voluntary, and it did not cure the deficiency of plea counsel's representation. The circumstances of this plea were unnecessarily hurried, and the error could have been cured if the plea court had asked Taylor if he knew the sentence he faced. "To ensure the defendant understands the consequences of his guilty plea, the trial judge usually questions the defendant about the facts surrounding the crime and punishment that could be imposed." *Roddy*, 339 S.C. at 34, 528 S.E.2d at 421. The plea court merely asked Taylor if he understood that an *Alford* plea did not "change the consequences in any way" but did not question him about the sentencing range or the consequence of the charges. The plea court stated, "I'm not going through your rights. You know what they are." The plea court did not sufficiently determine whether Taylor understood his rights in the plea process or the possible sentence he faced. *See Pittman v. State*, 337 S.C. 597, 601, 524 S.E.2d 623, 625 (1999) ("[T]he trial court's lack of questions to ensure Pittman's understanding of the consequences of his plea, coupled with the trial court and attorney's failure to explain the elements charged, further indicates Pittman's plea was not voluntary, intelligent, and knowing.").

Under *Strickland v. Washington*, 466 U.S. 668 (1984), when determining prejudice to the PCR applicant, the court "focuses on whether counsel's ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty . . . ." *Alexander v. State*, 303 S.C. 539, 542, 402 S.E.2d 484, 485 (1991). The *Alexander* court found the petitioner's testimony that if trial counsel had not misinformed him he would not have pled guilty fulfilled the prejudice requirement of *Strickland*. *Id.* at 543, 402 S.E.2d at 485. Here, the record supports the PCR court's finding that Taylor's testimony that he would not have pled guilty if he had been correctly informed about the sentencing range demonstrates prejudice to Taylor entitling him to post-conviction relief.

Accordingly, the order of the PCR court is

**AFFIRMED.**[4]

**WILLIAMS, C.J., and GEATHERS and TURNER, JJ., concur.**

---

[4] We decide this case without oral argument pursuant to Rule 215, SCACR.